STAPLES v. HURON NAT. BANK (LOSTUTTER, Intervenor).

1. A bank, to which real property has been conveyed by an officer of the bank, in his individual capacity, for its full value, incumbered by a mortgage executed by such bank officer in his individual capacity and to which such bank is in no manner a party, is not liable to the mortgagee for a loss sustained by him, because of worthless securities received by him in exchange for a discharge of such mortgage, where such securities were the individual property of such bank officers, and such discharge was obtained by such bank officers in their individual capacities, and not as officers of the bank.

2. Neither will the fact that such bank officers, at the time of such sale, received from the bank the full cash value of such property, render the bank liable for such loss by the mortgagee; the bank taking the property with full covenants of warranty, and having the agreement of the two parties interested in the property at the time of the sale that they would save the bank harmless against such mortgage.

(Syllabus by the Court.   Opinion filed Feb. 15, 1896.)

Appeal from circuit court, Beadle county.   Hon. A. W. CAMPBELL, Judge.

Action to impress funds derived from a sale of real estate in the hands of receiver of defendant bank, with payment of plaintiff's mortgage debt to the extent of the face value of alleged fraudulent securities substituted therefor.   The receiver intervened.   From a judgment for defendant and from an order denying a new trial, plaintiff appeals.   Affirmed.

The facts are stated in the opinion.

*T. H. Null,* for appellant.

Before the bank sold the property, plaintiff was entitled to have the mortgage restored. Jones on Mortgages, § 966. The identical money or property need not be identified or pursued, but it ts sufficient to trace it to the hands or estate of the defendant. McLeod v. Evans, 28 N. W. 173; Bank v. Kimball Milling Co., 1 S. D. 388; Bank v. Ins. Co., 104 U. S. 54.

*A. E. Chamberlain* (*A   W. Burtt,* of counsel), for respondents.

The evidence must not only disclose the fact that the party relied upon the representations and believed them as made, but that he believed them because the party made them. Bank v. North, 2 S. D. 480, 51 N. W. Rep. 98; Sioux Banking Co. v. Kendall *et al.,* 6 S. D. 543.


CORSON, P. J.   The plaintiff a resident of Dubuque, Iowa, instituted this action against the defendant bank to recover the sum of $3,500. L. L. Lostutter, having been appointed a receiver for the bank, was granted leave to intervene. The court made findings of fact and conclusions of law in favor of the defendant, upon which a judgment was rendered. A motion for a new trial was made and denied, and the plaintiff appeals from the judgment and order denying a new trial.

The plaintiff in his complaint, alleges, in substance, that the defendent, a national bank, in 1885 purchased a lot in the city of Huron for $2,500; that said bank, within a short time thereafter, conveyed the same to John A. Fowler, its cashier; that a bank building was erected upon said lot by said Fowler for the use of said bank, and which was subsequently occupied by said bank; that said Fowler, in July, 1885, with his wife, executed a note and mortgage upon said property to one Walker to secure the payment of $8,000, which said note and mortgage, before their maturity, were duly transfered by said Walker to the plaintiff; that said Walker, at the time of such transfer, executed a discharge of said mortgage, which was delivered, with

said note and mortgage, to the plaintiff, that, in January, 1889, the said Fowler reconveyed said property to the bank, the consideration mentioned in said deeds of conveyance being $2; that in November, 1890, the defendant bank made to the plaintiff certain fraudulent representations (setting the same out in full) upon which he relied, and by which he was induced to deliver up to the bank the discharge of the aforesaid mortgage, and take in exchange therefor certain shares of stock in the Building Association of Huron, and city warrants of the city of Huron, of the par value of $3,500; that said Huron city warrants were fraudulent and worthless, which was well known to the defendant bank; that said bank property, so discharged from said mortgage, has been sold by the receiver of said bank to innocent purchasers for $8,025—and the plaintiff demands judgment against said defendant bank for $3,500, the par value of said city warrants, interest, and costs. The defendant bank answered, denying the making of any representations to the plaintiff, fraudulent or otherwise, or that it was the owner of the securities exchanged for the discharge of said mortgage, or that said discharge was obtained in any manner by the defendant. This answer was, by stipulation, made the answer of the receiver. The plaintiff, on the trial, introduced evidence tending to prove that L. W. Hazen was, and since 1885 had been, the president and the principal owner of the stock of said defendant bank, and that John A. Fowler had been, since said date, its cashier; that L. S. Hazen was the father of L. W. Hazen, and a stockholder and director in said bank, that said L. S. Hazen went to Dubuque, Iowa, and there represented to the plaintiff that he was acting as the agent of said bank, made the representations set out in the complaint, delivered the securities referred to in the complaint, and obtained from the plaintiff the discharge aforesaid; that the securities exchanged for the discharge of the mortgage were the property of the bank, and that the city warrants were issued without consideration, for an unlawful purpose, and were fraudulent and worthless; that the

conveyances of the property were made as alleged—and introduced some documentary evidence, not necessary to be further noticed than to say it tended to sustain plaintiff's case, and rested.    The defendant thereupon introduced evidence tending to prove that the sale of the lot in 1885, by the bank to John A. Fowler, was made to him for the benefit of himself and said L. W. Hazen in their individual capacities, and was a *bona fide* transaction; that said bank building was erected at the individual expense of said Fowler and Hazen; that the property was reconveyed to the bank for the actual consideration of $16,500, though only a nominal consideration was expressed in the deed and that the deeds contained full covenants of warranty; that said L. S. Hazen was sent to Dubuque by said L. W, Hazen and said John A. Fowler, at their individual expense, and as their agent; and that the securities exchanged for the discharge of the mortgage were their individual property, and not the property of the bank, although, prior to that time, they had belonged to the bank.    The bank book and documents offered in evidence tended to sustain the oral evidence above set forth.

Upon the evidence submitted the court found, among others, the following facts:   "(11) I find that, on or about the 9th day of January, 1889, the said Huron National Bank purchased the said lot and building of said Hazen & Fowler, and paid them, then, therefor, in cash or its equivalent the sum of $16,500, and that said Hazen & Fowler then conveyed the same to said bank by warranty deed, containing the usual covenants of warranty, and among which was one warranting the said property to be free and clear of all incumbrances whatsoever; that said mortgage was at that time a lien upon said property so conveyed, but that said Hazen & Fowler agreed to pay the same; and that said Huron National Bank in no way whatever assumed the payment thereof, nor agreed to pay the same.    I further find that said loan was not negotiated to said bank, nor for its benefit, and that said bank never agreed to pay the same nor become liable therefor in any manner whatsoever.    (12) I

find that the plaintiff, on or about November 1, 1890, released and satisfied the mortgage described in plaintiff's complaint, upon certain representations made by L. S. Hazen, but that said L. S. Hazen was not in any sense authorized to act for the said bank in procuring such release, but was acting wholly for said L. W. Hazen and John A. Fowler." "(14) I further find that said L. S. Hazen did not make any representations of matters of fact, during the transaction referred to, which were false, or which were known to him to be false. (15) I further find that said debt was a debt of John A. Fowler, guarantied by L. W. Hazen and Walker & Rhomberg, for which the defendant bank was in no way liable. (16) I further find that said L. S. Hazen, in negotiating the transaction complained of was the agent of said John A. Fowler and L. W. Hazen, and was not in any way authorized to act for or represent the defendant bank. (17) I find no evidence whatever that plaintiff, in releasing the mortgage, relied upon or believed what said L. S. Hazen said, simply because he said so; but if he believed his statements at all, it was because they were substantiated by other matters within plaintiff's knowledge, or that he presumed he knew. (18) I further find no further evidence that plaintiff has ever offered to rescind his contract whereby he released his mortgage, but that he has at all times retained, and still retains, the same, and the benefits thereof." These findings were excepted to by the plaintiff as not being sustained by the evidence. The evidence was to some extent conflicting, but there was not such a preponderance of the evidence against the findings as would justify this court in disturbing them.

The questions presented are mainly those of fact, and only one or two questions of law seem to require consideration. Appellant contends that, as L. W. Hazen was president of the bank, and he and his family were the principal owners of its stock, that as John A. Fowler was its cashier, and L. S. Hazen, who negotiated for the discharge of the mortgage, was a director and stockholder in the bank, the bank is charged with

knowledge of the transactions relating to the discharge of the mortgage; and having received the benefit of such discharge it became liable to the plaintiff for the loss he sustained by reason of such discharge. Appellant further contends that "before the bank sold the property, there can be no question about the right of plaintiff to have had the mortgage restored. Jones, Mortg. Sec. 966. The bank not only did not part with anything to secure the discharge aside from the securities but was certainly a party to the wrong. The bank furnished the worthless securities, and all of its officers knew the use to which the securities were to be put, and a director of the bank appeared in Dubuque with the securities, and upon representations made by him he secured the discharge. When the discharged was delivered to the bank, the bank had knowledge of the whole transaction, and it parted with nothing to secure the release. The bank, when Fowler conveyed the property, in effect paid Fowler the full value of the property. Hence, when the discharge was delivered, it was not called upon to pay anything more, and did not do so. From this it will be seen that the production of the discharge by Fowler & Hazen did not induce the bank to part with anything of value, or in any manner alter or change its condition on the strength of the discharge. If the plaintiff could have avoided the discharge, as against the bank, so long as the bank owned the property, it can be said that the bank, by a conveyance of the property, could defeat the plaintiff's rights? I think that the conveyance had the effect of cutting off the plaintiff's right to pursue the property, but justice would certainly require that plaintiff be permitted to impress the fund derived from the sale of the property. If the plaintiff had a right to the property, he certainly had as good a right to its proceeds, when the bank, a party to the wrong, has by its act placed the property beyond the reach of the plaintiff."

The first proposition is not tenable. If the discharge of the mortgage was in fact obtained by L. S. Hazen, as the agent

of L. W. Hazen and John A. Fowler, and for them, and not for the bank, and the property given in exchange for such discharge of the mortgage was in fact the individual property of said L. W. Hazen and John A. Fowler, and not, at the time of the exchange, the property of said bank, then the bank corporation incurred no liability, by reason of such discharge, to pay to the plaintiff his loss sustained thereby. The bank had, for its security against said mortgage, not only the covenants of warranty on the part of John A. Fowler, but the further agreement to discharge it on the part of L. W. Hazen and said Fowler; and the discharge of the mortgage was evidently procured by them to protect themselves against their covenants and agreements with the bank. The bank, therefore, not being a party to the note or mortgage, or liable thereon, and not being in any manner a party in procuring the discharge of the mortgage, we can discover no principle of law under which the bank could be held liable to the plaintiff for any loss sustained by reason of said discharge, obtained by Hazen & Fowler, through their agent, L. S. Hazen.

The second proposition, that the bank property, if the defendant had still remained its owner, would have been held by the bank, subject to the right of the plaintiff to have the discharge cancelled, and his mortgage restored of record, would present an interesting question, if the court had found that the discharge of the mortgage was actually procured by misrepresentations of facts of which the bank was chargeable with actual notice, and the plaintiff had promptly rescinded the contract by which the discharge was obtained, and had restored to the parties the securities obtained in exchange for such discharge. But with the findings of the court that there were no false representations, and that plaintiff did not rescind the contract, it does not seem necessary to determine that question on this appeal.

But, were appellant's contention on this second proposition correct, it would by no means follow that the plaintiff could

impress the proceeds arising from the sale of the property with a trust in plaintiff's favor for the amount of his loss. The theory under which the mortgage lien might possibly have been restored, if the bank had still remained the owner of the property, is that the defendant would seem to sustain no loss by reason of such restoration, as it had made no new advances or payments to Hazen & Fowler on the faith of the discharge, and it would still be able to rely upon the covenants and agreements of Hazen & Fowler for its protection, and it would not be placed in any different position than it occupied before the discharge. But, in such case, it would not become liable to the plaintiff, to make good his loss, otherwise than to hold the property subject to the mortgage. But, when the bank conveyed the property to an innocent purchaser for value, it did not thereby assume any liability to the plaintiff, and, not being so liable, the proceeds of such sale could not be impressed with the trust in favor of the plaintiff. After the sale of the bank property freed from the mortgage, Fowler & Hazen were discharged from their covenants and agreements with the bank to pay off the mortgage and save the bank harmless as against the same. The bank, therefore, after the sale, occupied an entirely different relation to the property and to Hazen & Fowler. To hold, therefore, that the plaintiff could follow the proceeds would be in effect to require the bank to pay the plaintiff his loss by reason of the discharge, for which we hold the bank is not liable. It will not be necessary to pursue this discussion further, as we are clearly of the opinion that, under no view of the case, can the appellant's contention be sustained. The judgment of the circuit court, and its order denying a new trial, are affirmed.