W. L. WATSON, trustee in bankruptcy W. W. MILLS COMPANY, v. PROXIMITY MANUFACTURING COMPANY.

(Filed 22 April, 1908).

PLAINTIFF'S APPEAL.

1. Bankruptcy—Trustee—Estoppel.

   A trustee in bankruptcy is estopped by the acts of the bankrupt, in the absence of fraud, and bound by his conduct and agreements to the same extent the bankrupt would have been bound before the adjudication.

2. Corporations—Principal and Agent—Loan Apparently to Officer— Liability of Corporation—Evidence Aliunde—Presumptions.

   It is competent to show by evidence *aliunde* that a loan apparently made to an officer of a corporation was in fact made to the corporation.   Therefore, when it appears from the evidence that the plaintiff corporation urgently requested a loan of money of defendant, which was refused, and at or about the same time its president and treasurer, and owner of most of its stock, went to defendant and secured from it the loan upon his individual note and collateral, under such facts and circumstances as to reasonably infer that the loan was for his corporation and that he was acting for it, the latter will be bound to its payment.

3. Corporations—Principal and Agent—Loan Apparently to Officer—Liability of Corporation—Presumptions—Surrender of Collaterals—Application of Funds.

When M. had entered into a contract with defendant to furnish a large quantity of lumber for the building of its mills, and subsequently he formed a corporation for the purpose of continuing this business, of which he was president and treasurer and owner of nearly all of the stock; and subsequently when the plaintiff corporation, being in need of money to carry out the contract which with the consent of the defendant it had assumed, applied to defendant for a loan and was refused, but at or about that time it was made upon the application of M., the president, upon his personal note and collateral: *Held*, (1) that the defendant had a right to suppose that the loan was for the corporation and in aid of the contract in the performance of which the defendant was greatly interested; (2) that at the maturity of the loan it was reasonable for defendant to charge the amount against the account for lumber furnished by the plaintiff corporation at the request of the president and surrender to him his personal note and collaterals; (3) that it was not encumbent upon defendant to see to the application of the funds derived from the loan in order to charge the plaintiff corporation therewith.

4. Same—Ratification.

Evidence of ratification by a corporation of the act of its president, who practically controlled it, in directing it to be charged with his personal note given to defendant for moneys advanced inferentially for the benefit of the corporation, is sufficient which tends to prove that defendant acted in good faith in taking the credit and surrendering to the president his personal note and securities; that at the time the president and his corporation were both solvent; that defendant was credited with the amount by the bookkeeper of plaintiff corporation, and moneys were had of defendant upon the strength of the credit; all the members of the corporation had notice of it, it was never questioned in subsequent dealings and no demand was made on account thereof until after both the president and his corporation were adjudicated bankrupts.

5. Corporations—Power of President, Express or Implied.

The management of the entire business of a corporation may be entrusted to its president, either by express resolution of the directors or by acquiescence in a course of dealing.

ACTION heard by *Long, J.,* at October Term, 1907, of WAKE.

This is a civil action brought by plaintiff as trustee in bankruptcy of the above-named corporation to recover of defendant a large balance alleged to be due on an account for lumber furnished defendant, and for damages alleged to have been sustained by the bankrupt for a breach of a part of said contract relating to maple flooring, etc. The cause was referred to R. H. Battle, Esq., who heard it and made his findings of fact and law and duly reported the same, together with the evidence taken. Plaintiff and defendant filed exceptions to the report, which were heard at October Term, 1907, of the Superior Court of Wake County, his Honor, *B. F. Long,* Judge presiding, who overruled all the exceptions, confirmed the report and rendered judgment against defendant for the sum of $1,632.60, with interest from 1 August, 1904. Both plaintiff and defendant excepted and appealed. The plaintiff excepted to the ruling of the referee allowing the defendant credit for an item of $10,000, the facts concerning which are stated in the opinion of the Court.

*R. C. Strong* and *R. N. Simms* for plaintiff.
*King & Kimball* and *J. H. Pou* for defendant.

BROWN, J., after stating the facts: It appears from the findings of the referee that on 3 September, 1902, the defendant contracted with W. W. Mills for the delivery by said Mills of a large quantity of lumber for the construction of a factory. The defendant shortly thereafter advanced Mills $10,000 to assist him in carrying out his contract, which was repaid by lumber shipped to defendant by Mills and by the bankrupt corporation after it was created. About the end of the year 1902 W. W. Mills caused to be organized a corporation by the name of W. W. Mills Company, with an authorized capital stock of $200,000. Of this amount $190,000 was issued to W. W. Mills and $5,000 to R. D. Godwin. W. W. Mills was president and treasurer, and in the absence of directors and when no special meeting was held he was

allowed and did exercise the power of making such contracts as to him seemed wise. No act of Mills was ever questioned by the company. Fifty shares of stock were issued each to Godwin and Woollet without payment and to qualify them to act as officers of the corporation. Neither ever paid for this stock. Mills conveyed to this corporation his entire lumber manufacturing plant—property, contracts and business. The defendant making no objection, the W. W. Mills Company undertook to complete the performance of the contract for the delivery of the lumber. There appears to have been much delay upon the part of the Mills Company in making deliveries during 1903, occasioned evidently by lack of available money to push its business. On 28 July, 1903, the W. W. Mills Company wrote to defendant and asked as "an accommodation" an advance of "a few thousand by return mail," saying they had to meet calls for ten or twelve thousand "first of the week." On the same day W. W. Mills, president and treasurer, in person, went to Greensboro to see Cæsar Cone, president of defendant company. He obtained an advance of $10,000, giving his personal note, with stock in the Carolina Trust Company as collateral, to secure this advance. When the note fell due W. W. Mills, the president and treasurer of his corporation, directed that the amount be charged to said company as a payment by defendant upon the lumber contract. This was done and the note cancelled and the collateral delivered to W. W. Mills. On 22 December, 1903, Godwin, secretary for the Mills Company, in a partial settlement with defendant, gave to defendant a statement of account, which showed a credit to defendant of this $10,000. The ledger of the W. W. Mills Company showed that defendant was credited 11 January, 1904, with $10,000, and it is not denied that this is the disputed item or the "second ten thousand" loaned 28 July, 1903. The W. W. Mills Company and W. W. Mills have been adjudicated bankrupts and the plaintiff, W. L. Watson, appointed trustee in bankruptcy.

Both the referee and the court below held that defendant was entitled to a credit for this $10,000. The correctness of this ruling is the sole point presented by plaintiff's appeal. It is contended by the defendant that the trustee stands in the shoes of the bankrupt and represents only the creditors in existence at the time of bankruptcy, and that the trustee can assert no right which the bankrupt could not assert. Under the authority of well-considered cases we are of opinion that the trustee is estopped by the acts of the bankrupt and bound by its conduct and agreements to the same extent that the bankrupt would be bound before the adjudication, especially in view of the fact that there is no suggestion, much less evidence, of fraud in the transaction of 11 January, 1904, when the defendant was regularly credited on the books of the seller with this ten-thousand-dollar item. There was not only no purpose to defraud any creditor of the bankrupt, but there appears to be no creditor in existence who extended credit until some time subsequent to that date. *Thompson v. Fairbanks,* 196 U. S., 296; *Hewitt v. Berlin Co.,* 194 U. S., 296; *Atchison Railway v. Hurley,* 153 Fed. Rep., 503; Loveland on Bankruptcy, p. 436; *In re Manufacturing Co.,* 152 Fed., 152; *Engle's case,* 105 Fed., 818. Therefore it follows, in the absence of any finding of fraud, that if the W. W. Mills Company could not recover the $10,000 and is bound by its act in giving credit therefor, the plaintiff, its trustee in bankruptcy, is likewise bound and cannot recover.

We think that the exception of the plaintiff to the ruling of the referee and of the court below confirming it cannot be sustained.

1. Upon the facts found by the referee, as well as from the uncontradicted evidence, the inference appears to us to be plain that the money was borrowed for the benefit of the bankrupt and not for W. W. Mills personally. The course of dealing in respect to the contract shows that the defendant had advanced $10,000 to W. W. Mills to assist him in per-

forming it, and that when his lumber business was incorporated the corporation took over the contract and repaid a large part of such advance. It is plain from the evidence that the company during the spring and summer of 1903 was in great need of cash to carry on its business. Its secretary writes to the defendant: "We have been running without money recently, until we have about dried up and there is not much left of us. However, we keep trying to go." It was not Mills personally who wrote the letter to defendant of 28 July asking for an advance loan of "a few thousand by return mail" in order to meet urgent demands on the company, but it was the W. W. Mills corporation, by its secretary. The matter was so pressing that the president and treasurer, W. W. Mills, followed the letter at once and went to Greensboro to negotiate the loan, evidently for his company and not for himself. As the defendant refused to advance the Mills Company anything further on open account, it is a fair inference that in order to obtain the money Mills hypothecated his own note and securities for the benefit of the corporation of which he was practically owner. That the corporation received the benefit of it is evidenced by the fact that on 22 December, 1903, Godwin, secretary, rendered a statement of account crediting the defendant with this ten thousand, and on the strength of it drew more money; and also by the fact that the credit to the defendant is entered by the bookkeeper on the ledger of the Mills Company. It is competent to show by evidence *aliunde,* and we think it fully proven, that the loan was in truth made to the company and not to Mills, although in form to the latter. 7 Thompson on Corp., sec. 8402; *Jones v. Williams,* 37 L. R. A., 682. Thompson, at the end of paragraph 8402, says: "A contract made by the holder of a majority or most of the shares of a corporation, without disclosing that the person signing the contract acted as agent for the corporation, may nevertheless be shown by evidence *aliunde* to have been intended as a corporate contract, and

should be specifically enforced in equity as against such corporation." Again, "Although the form of the transaction may be such as to indicate that it is the individual debt of the president of a corporation, yet if in point of fact the money was advanced for the use of the corporation, to be repaid out of its funds, it will be bound to make it good." Section 8412. *Lafferty v. Hall,* 19 Ky. L. Rep., 1777; *Staples v. Bank,* 66 N. W., 314. When Mills appeared at Greensboro, supplementing by his presence the company's written request for the loan, the defendant had the right to suppose that the loan was for the company and in aid of the contract in the performance of which the defendant was greatly interested. And when the debt fell due and Mills directed that it be charged up to the corporate account it was entirely reasonable that the defendant should do as directed—surrender the collateral and not question Mills' authority. He combined in himself the four attributes of president, treasurer, general manager, majority stockholder and actually sole stockholder. The powers of such a person are set out in Thompson, 8556, who says: "A stranger dealing with the corporation is not affected by secret restrictions upon his (such manager's) powers of which he has no notice. In short, the powers of one who has been appointed general manager of the business of a corporation are, in America, generally understood to be coextensive with the general scope of its business. He has, for example, the implied power to dispose of its property in the ordinary course of its business. A person dealing with the corporation through him may safely act on the assumption of his possessing this power, in the absence of anything indicating a want of it." The management of the entire business of a corporation may be entrusted to its president either by express resolution of the directors or by their acquiescence in a course of dealing. *Jones v. Williams, supra.* The evidence discloses not only that all of Mills' acts were acquiesced in by his two associates in the corporation, but that Mills was the corpora-

tion and the corporation was Mills. He controlled the business as absolutely after its incorporation as he did before.

2. It is contended that there is no evidence that the corporation actually received the money advanced by the defendant or any benefit from it. While we think there is evidence that it did, yet the authorities hold as matter of law that the defendant was not bound to see that Mills applied the money to the relief of the company's needs or to the purposes for which it was obtained. We think we have shown that from all the evidence and findings the loan was first applied for directly by the corporation, acting through its secretary, for corporate purposes, and that the negotiation was conducted by Mills, its president and treasurer, in person, for the corporation, to a successful conclusion. As he was the treasurer and president, as well as in effect sole owner of the corporation, the defendant was authorized to pay him the money. There was no one else authorized to receive it. The fact that in order to obtain the advance for the company as applied for in its letter Mills was required to put up his own individual securities does not make it anything less a corporate obligation or a transaction for and in behalf of the corporation. In reference to this Judge Thompson says: "One who lends money to a corporation through its principal officer on the pledge of its security as collateral is not bound to see that the money is applied to the corporation purposes, nor is he put upon inquiry as to whether it is a transaction of the corporation or of the officer, from the fact that the individual note of the officer is offered as additional security." Thomp. Corp., sec. 8412. Having advanced the money at the request of the corporation for the evident purpose of enabling it to perform its contract with defendant, and having paid the money to its treasurer, it was not encumbent on the defendant, in order to charge the corporation, to follow the fund any further. *Buffalo Loan Co. v. Gas Co.*, 42 N. Y. Supp., 781; *Long Island Co. v. Railway*, 65 Fed., 455. As said in the *Buffalo case*,

WATSON *v.* MANUFACTURING CO.

"The corporation was then present at the time of the transaction and received the moneys through its representative and by means of the statement that the funds were desired for corporate purposes. In contemplation of law, therefore, the funds came into possession of the company; and that being the case the plaintiff was under no obligation to see to it that the moneys were applied to the purposes for which the obligations were issued, and consequently it is not responsible for their misapplication."

3. The act of Mills in directing the defendant to charge up the $10,000 to his corporation was fully ratified, as shown by the facts found by the referee, and his findings are fully sustained by the evidence. The referee finds and the evidence proves that the defendant acted in entire good faith in taking the credit and in surrendering the securities deposited by Mills; that at that time he and his corporation were both solvent and that the defendant had no knowledge of the state of account between Mills and his company. The defendant was credited with the sum on the books of the corporation by its bookkeeper and a statement containing such credit exhibited to defendant and $3,000 more drawn by the secretary from defendant on the strength of it. All the members of the corporation had notice of the credit and assented to it, and it was never questioned by the Mills Company or any member of it during the subsequent dealings with defendant, and no demand was ever made on account thereof until after the corporation and Mills himself were both adjudicated bankrupts. It would seem that if the act of Mills needed ratification it has been fully ratified and adopted by the company and all its members. *Jones v. Williams,* 37 L. R. A., 688; Thompson on Corporations, secs. 5249, 5250 and 5251.

We concur with the court below in overruling the plaintiff's exception to the report of the referee, and upon the plaintiff's appeal the judgment is

Affirmed.

The cost of this appeal will be taxed against the plaintiff.

PER CURIAM: The defendant filed a number of exceptions to the report of the referee embodying its contentions: First, that the maple flooring contract was rescinded in January, 1904, and that no·damages can be claimed for not taking the portion then undelivered. Second, that it is entitled to hold the 2 per cent. discount on money advanced to pay freight. Third, that it is entitled to damages sustained by failure of W. W. Mills and W. W. Mills Company to complete delivery of all of the lumber under contract of 3 September, 1902, by 1 December, 1903.

We find no exceptions to the rulings of the referee upon matters of evidence. Fifteen of defendant's exceptions are to the findings of fact and four to the conclusions of law of the referee. We think, upon an examination of the record, that there is evidence to support all the findings of fact. Having made such findings, the conclusions of law reached by the referee upon such facts are correct. The matter as disclosed by defendant's appeal seems to be almost entirely one of fact. We find no error in the ruling of the Superior Court overruling the exceptions and confirming the report.

The costs of this appeal will be paid by defendant.

Judgment Affirmed.