M. F. CLOWE v. THE IMPERIAL PINE PRODUCT COMPANY.

*Corporation—Scope of General Manager's Authority—Validity of Contract.*

1. Section 683 of *The Code* (now repealed), requiring contracts by corporations for more than one hundred dollars to be in writing, applied only to executory and not to executed contracts.

2. A corporation is liable on a contract made by its general manager within the scope of its business.

3. In an action against a corporation for the board of its employees where there was no agreement as to the price or as to the length of time for which board was to be furnished, and extra services were rendered, the amount of compensation was properly left to the jury.

This was a CIVIL ACTION, tried before *Brown, J.*, on appeal from a Magistrate's Court, at the January Term, 1894, of NEW HANOVER Superior Court.

The plaintiff sued the defendant company to recover the sum of $112 alleged to be due the plaintiff by the defendant for the board of two workmen furnished by the plaintiff under an alleged contract with the defendant to pay for the same. The suit was brought to recover on a *quantum meruit* under contract executed.

The contract was denied by the defendant.

Witnesses for the plaintiff testified that they knew L. F. Brown, and knew him to be the superintendent and general manager of the defendant company.

The plaintiff, Mrs. M. F. Clowe, testified that she was a boarding-house keeper, and made a contract with the defendant to board two men. The contract was made with L. F. Brown, who was superintendent of the defendant company, in January, 1893. Mr. Brown came and asked her to board two men for defendant. Contract was not in writing.

Objection by defendant upon the ground that contract was not in writing. Overruled, the plaintiff promising to show the contract had been executed and that she was suing for the value of the service.

Plaintiff, continuing her testimony, said: " Brown said he wanted me to board the men, and that the company would pay their board. He did not know how long they would stay; that they might be here for one, two or three weeks. They stayed each eight weeks, or fifty-six days. No price was agreed upon as to what I should charge. No contract was made as to price. Mr. Brown said that the men must have their breakfast at six o'clock and be ready to get in the sulky of defendant company, which would call for them every morning at a quarter after six. I also agreed to prepare their dinner for them, so that they could take it with them to the company's works, which were beyond the city limits. I got up at four and five o'clock

in order to get their breakfast and dinner ready and gave them especial attention. The service was worth one dollar a day for each, making a total of $112. I boarded them each for fifty-six days. The two men were brought out here by defendant from New York to put up retorts. Brown told me the company was to pay their board; that the men were not to pay for it. Brown said he was representing the company."

On cross-examination plaintiff said: "Nothing was said to me by Brown that the defendant company had authorized him to contract a debt for board for these two workmen. About two weeks after the workmen had left I met Brown on Fourth street, some distance from my house, and he asked me if those workmen hadn't left without paying their board. I told him yes. Brown said 'It is all right; you can look to me for the payment of the bill.' Brown never did tell me that the company had ever authorized him to contract debts for board, nor did he say that the company had specially authorized him to say that it would be responsible for it. He said nothing about what his authority was to make the contract with me for the company. I presented the bill to Brown, as he was superintendent of the company, and he refused to pay the same, stating that the bill was too large; that I was only entitled to sixty-four dollars for two months' board each, of the two workmen. My prices for regular boarders' are sixteen and twenty dollars per month. I charged these workmen one dollar a day each, as I considered them transient boarders."

There was testimony that the regular prices for transient boarders of private boarding-houses in Wilmington was one dollar per day.

Iredell Meares testified for the plaintiff as follows: "I knew L. F. Brown, and knew him to be the general manager of the defendant company at the time of the alleged

contract. I am the attorney of Mrs. Clowe. I instituted suit for her in the magistrate's Court. I presented a bill made out against the defendant company, before the institution of suit, to Mr. L. F. Brown, in the office of the defendant company. Mr. Brown then told me that the defendant company was willing to pay $64, but they refused to pay $112, considering the charge exorbitant. He offered to give me a check for the $64. He did not say that it would be his personal check or the check of the defendant company. Subsequently Mr. McClammy, the defendant's attorney, tendered me $64 in payment of the bill. I do not remember positively whether this was before or after the magistrate's trial. The magistrate gave judgment for $64."

The defendant introduced no testimony.

Before the case was argued the defendant moved to dismiss the case for the following reasons:

"1. That the contract was not reduced to writing, and, it being for a sum exceeding the sum of $100 under the statute, was void.

"2. That from the evidence of the witness upon the stand, the defendant denying the contract as set out by the plaintiff, it was not proven that the company was in any way liable under the contract, but that the contract made was the individual contract of Brown.

"3. That the said contract, if proven, was *ultra vires* of the defendant company, for that the said Brown as agent of said company had no authority, general or special, to make such contract, nor could said company have delegated to said Brown authority to have made the said contract alleged, as the same would have been in contravention of its charter provisions."

His Honor refused to dismiss the action, and submitted to the jury the following issues:

"1. Is the defendant company indebted to the plaintiff for the board and lodging of two men, as alleged by plaintiff?

"2. If so, what is the value of said service?"

The defendat asked the Court to charge the jury, as a matter of law, that if the defendant was liable at all under the contract, it was only liable to the extent of what the plaintiff's regular prices for board were, by the month; that these workmen, having remained for as long a period as two months, were not, in contemplation of law, transient boarders, but regular boarders, and that the law treated them as such.

The Court refused to give the instruction prayed by the defendant, and charged the jury instead that if the evidence of the plaintiff's witnesses was to be believed the defendant company would be liable, and it was for the jury to say, from all the facts and circumstances testified to, what the plaintiff was entitled to recover.

The jury answered the first issue "Yes" and the second issue "$112."

The Court thereupon gave judgment for the plaintiff for $112, with interest and costs, and defendant appealed.

*Mr. Iredell Meares,* for plaintiff.

*Messrs. H. McClammy* and *J. D. Bellamy,* for defendant (appellant).

MacRae, J.: The plaintiff relies upon an executed contract and sues for the reasonable value of her services to defendant in boarding for the time stated. two of its employees at the request of its superintendent and general manager. The defendant's first defence is that the contract was not reduced to writing under section 683 of *The Code* (since repealed) and therefore cannot be enforced.

It was held in *Curtis* v. *Piedmont Co.*, 109 N. C., 401, that this statute was applicable to executory and not executed contracts. And this upon the sound doctrine that the defence of *ultra vires* will not avail when the contract itself has been in good faith fully performed by the other party, and the corporation has had the full benefit of the contract. 2 Beach Pr. Cont., section 424.

Upon the second and third grounds of defence that there was no proof that the contract was made on behalf of defendant, nor that, if so made, the general manager had authority to make such contract, we think that in the absence of proof to the contrary in a particular instance, the general scope of the corporate business of a corporation such as defendant would include the board of its employees, and the corporation is always liable on a contract made by its manager and superintendent within such scope. The testimony clearly pointed to the fact that the service was to be performed for the corporation and not the manager.

Indeed, it seems from the testimony that the only real contention of defendant was as to the value of the services. This was submitted to a jury; his Honor was asked to charge the jury that plaintiff could not, under the circumstances, recover more than regular prices for board by the month, not for transient board. As no specified time was agreed upon for which the men were to be taken, and there was testimony of extra services rendered them, it was properly left to the jury to settle the amount the plaintiff was entitled to have, and there is                No Error.