HARVEY MORRIS, on Behalf of Himself and All Other Creditors of the Y. and B. Corporation, v. THE Y. AND B. CORPORATION.

(Filed 21 May, 1930.)

1. **Trial D a—On motion of nonsuit all evidence should be taken in the light most favorable to the plaintiff.**

On defendant's motion as of nonsuit the evidence and every reasonable intendment therefrom is to be regarded in the light favoring the establishment of the plaintiff's cause of action, whether the evidence be that introduced by either the plaintiff or the defendant or elicited from the defendant's witnesses. C. S., 567.

2. **Trial H b—Findings of fact by court under agreement are as conclusive as verdict when supported by evidence.**

Upon the agreement of the parties that the trial judge hear the evidence and find the facts in controversy, the findings so made are as conclusive as the verdict of the jury would have been when the findings are supported by the evidence.

3. **Corporations G a—In this case held: unauthorized transaction made by president was voidable only, and was ratified by the corporation.**

Where a duly passed resolution of the board of directors of a corporation gives general authority to its president to borrow money and mortgage the corporate property for the purpose, and the president, in order to meet the requirements of the lender, has had certain corporate property deeded to him and has personally given a mortgage thereon to the lender and then reconveyed the property to the corporation which assumed the indebtedness, and the entire proceeds of the loan is turned over to the corporation which uses the funds to take up a valid corporate mortgage on the same lands and for the general business of the corporation, the president receiving no personal benefit from the transaction: *Held*, the mere fact that the directors had not given the authority to the president to make the particular transaction does not render it void, but voidable only, and the act of the corporation in so receiving the benefits is a ratification thereof, and the notes in the hands of a purchaser in due course for value without notice are valid, and upon the insolvency of the corporation such purchaser's claim to the extent of the value of the mortgage lien is superior to the claims of general unsecured creditors.

4. **Receivers E b—In this case held: unauthorized mortgage was ratified by corporation and constituted preferred claim against receiver.**

Where the president of a corporation having general authority to borrow money for the corporation has certain corporate property transferred to him and gives a mortgage thereon to a lender and reconveys the property to the corporation which assumes the indebtedness and receives the full benefit of the transaction with knowledge of its board of directors, and the notes thus secured come into the hands of an innocent purchaser for value without notice: *Held*, upon the insolvency of the corporation, the holder of the notes secured by the registered mortgage is entitled to a preference to the extent of the value of the mortgage lien as against the general creditors of the corporation.

23—198

5. Subrogation A a—Where corporation borrows funds to pay off prior
   valid corporate mortgage, lender is subrogated to rights of prior
   mortgagee.

   Where a corporation borrows money through the unauthorized act of its
   president and uses the funds so obtained to take up an existing valid cor-
   porate mortgage on its property, equity will subrogate the lender to the
   rights of the prior mortgagee, and upon the insolvency of the corpora-
   tion, the lender's claim is superior to the claims of the general unsecured
   claims against the corporation.

APPEAL by W. J. Shuford, receiver, from *Stack, J.,* at March Term,
1929, of MECKLENBURG. No error.

This was an action brought by plaintiff on behalf of himself and all
other creditors of the Y. & B. Corporation to have a receiver appointed
for the Y. & B. Corporation. W. J. Shuford was appointed receiver on
30 November, 1927.

The Guardian Life Insurance Company of America, a corporation of
New York State, filed a claim with the receiver of the Y. & B. Corpora-
tion for the payment of certain indebtedness, totaling $50,000 and
interest, alleging that it was secured by deed of trust on certain land of
the Y. & B. Corporation. The material allegations of the complaint:
J. A. Yarborough and wife, Josephine Yarborough, made and executed
a certain note for $50,000 on 28 April, 1927, to the Home Real Estate
and Guaranty Company of Charlotte, N. C., and to secure the payment
of the same executed a deed of trust to P. C. Whitlock and J. Arthur
Henderson, trustees for the Home Real Estate and Guaranty Company,
on certain real estate therein described, on the corner of East Fourth
and South Caldwell streets in the city of Charlotte, N. C. The same
was duly recorded in the office of the register of deeds for Mecklen-
burg County on 3 May, 1927, Book 650, of Deeds, p. 19, and "That the
property described in said deed of trust and given as security for said
loan was, at the time said note and deed of trust were executed, the
property of the Y. & B. Corporation and was immediately prior to the
execution of said note and deed of trust conveyed to the said J. A. Yar-
borough and said Y. & B. Corporation in order that he might obtain
said loan thereon for the benefit of the said corporation, and that when
said loan was made the proceeds thereof were paid to the Y. & B. Cor-
poration and said corporation immediately took a conveyance from J. A.
Yarborough and wife back to it for said property and in the deed of
conveyance assumed the payment of said $50,000 note, and that it has
been from the time said loan was made, and still is, liable for the pay-
ment thereof. That the Home Real Estate and Guaranty Company im-
mediately transferred and assigned said note without recourse to the
National Mortgage Corporation of New York, which company fur-
nished the money with which to make said loan. That on 12 May,

1927, before the maturity of any part of said note, the National Mortgage Company, for value, transferred and assigned said note, together with all its rights in and under the deed of trust securing the same, to this claimant, the Guardian Life Insurance Company of America, which company took said notes before maturity, for value, and without notice of any defects or infirmities therein and is still the owner and holder thereof. That no part of said note, principal or interest has been paid, although the first installment of $2,500 fell due on 28 April, 1928, and that there is now due and owing to this claimant on account thereof the sum of $50,000 with interest at the rate of 6 per cent per annum from and after 28 October, 1927, with interest on $1,500 unpaid interest since 28 April, 1928. That said deed of trust constitutes, as claimant is advised, informed and believes, a first lien on the property described therein for the payment of said indebtedness and that said claimant is entitled to have its claim allowed as a preferred claim to the extent of the value of the property described in said deed of trust and to have said property sold and the proceeds applied toward the payment thereof."

W. J. Shuford, receiver, on 4 September, 1928, and 15 December, 1928, in his reports, after setting forth the reasons, disallowed the claim as a lien on the real estate before mentioned, but allowed it as an unsecured claim against the corporation. Exception was duly made by the Guardian Life Insurance Company of America. The case came on for hearing before Stack, J., and the following stipulations of counsel appear in the record, duly signed by them: "It is stipulated in this case by counsel for both parties that a jury trial be waived and the presiding judge find the facts." The findings of fact and conclusions of law made by the court below were in favor of the Guardian Life Insurance Company of America. Judgment was rendered by the court below in favor of the Guardian Life Insurance Company of America.

The receiver requested the court below to find certain facts, setting them forth, which was refused. Exceptions and assignment of errors were duly made. The receiver duly excepted to the findings of fact and conclusions of law by the court below. Numerous exceptions and assignments of error were made by the receiver and appeal taken to the Supreme Court. The necessary facts will be set forth in the opinion.

*Whitlock, Dockery & Shaw for Guardian Life Insurance Company of America.*

*E. B. Cline, Preston & Ross and Tillett, Tillett & Kennedy for W. J. Shuford, Receiver.*

Clarkson, J. The main points relied upon by the receiver are: "1. That the attempt by J. A. Yarborough to convey corporation property to himself individually, without any authority from the corporation

and without the knowledge of any director of the corporation was absolutely void and passed no title whatsoever to himself individually. 2. That even if it should be held that the deed was not void, but only voidable, nevertheless under the circumstances in this case the deed of trust should be declared void upon several separate and distinct grounds."

On the other hand, the Guardian Life Insurance Company of America contends that the questions involved are: "The deed from Y. & B. Corporation to its President, J. A. Yarborough, dated 28 April, 1927, was not void, but was voidable, and the burden was on the claimant to show that it was either authorized or ratified by the corporation and that the transaction was fair, open and free from undue advantage and fraud. 2. Having received and used the proceeds of the loan, for its corporate purposes, the corporation is estopped to repudiate the acts of its officers in procuring the loan for it."

The receiver, at the close of the evidence for the Guardian Life Insurance Company of America, and at the close of all the evidence, moved for judgment as in case of nonsuit. C. S., 567. The court overruled these motions and in this we think there was no error. We think the controversy hinges on the question whether there was sufficient evidence to support the findings of fact.

It is the well settled rule of practice and the accepted position in this jurisdiction that, on a motion to nonsuit, the evidence which makes for the plaintiff's claim and which tends to support his cause of action, whether offered by the plaintiff or elicited from the defendant's witnesses, will be taken and considered in its most favorable light for the plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom. *Abel v. Dworsky,* 195 N. C., 867.

It is also well settled in this jurisdiction that controversies on issues of fact are determinable by a jury, and if there is any competent evidence on the issue the weight thereof is for the jury. It was agreed in the present controversy that the court below should find the facts.

In *Eley v. R. R.,* 165 N. C., at p. 79, we find: "A jury trial being waived, the findings of fact by the judge are as conclusive as the verdict of a jury, when there is evidence to support them *(Matthews v. Fry,* 143 N. C., 285)." *In the Matter of Assessment against Railroad,* 196 N. C., 756; *Colvard v. Dicus, ante,* 270. From the findings of fact in the court below we think the contentions of the Guardian Life Insurance Company of America must be sustained.

The facts found by the court below, and we think there was evidence to support same, were to the effect: That the Y. & B. Corporation had borrowed $30,000 from the American Trust Company on 7 March, 1927, and had made a deed of trust to T. E. Hemby, trustee for the American

Trust Company, on the land in controversy on the corner of East Fourth and Caldwell streets in the city of Charlotte, N. C. The deed in trust was duly recorded. The president of the Y. & B. Corporation, J. A. Yarborough, to take up this loan was desirous of borrowing an additional sum on the same property and paying off that lien, an application was made to the Home Real Estate and Guaranty Company of Charlotte, N. C. Sundry loans had been made by this corporation for the Penn Mutual Life Insurance Company, and in every instance the title to the property had to be transferred to an individual and a lien given on the property by the individual, and the property reconveyed to the corporation and it assumed the payment of the indebtedness. The law firm of Whitlock, Dockery & Shaw, represented the Home Real Estate and Guaranty Company in its legal matters. Application for the loan of the Y. & B. Corporation was turned over to Henry C. Dockery, a member of the firm. Supposing that it was a Penn Mutual Life Insurance Company loan, he prepared a resolution that the Y. & B. Corporation deed the property to J. A. Yarborough and he and his wife then sign the note and deed of trust to the Home Real Estate and Guaranty Company, of Charlotte, N. C., for the loan of $50,000, and then deed it back to the corporation and it assume the lien. All of which was done. A resolution embodying these facts was given J. A. Yarborough for the directors to pass and was returned to Dockery, the certificate signed by the secretary of the Y. & B. Corporation, as passed by the board of directors with the corporate seal attached. The truthfulness of this resolution was relied upon in making the loan and also a resolution of 13 September, 1926, certified by the assistant secretary of the Y. & B. Corporation bearing the seal of the corporation. That resolution, in part, is as follows: "Be it resolved, that the officers of the corporation be, and they are hereby, authorized and empowered to borrow money to be used in the business of the corporation, in such amounts and at such times as they may, in their best judgment, deem proper, and to give the notes or other evidences of indebtedness of the corporation in evidence thereof, and secure the same by pledge of personal property or choses in action or by mortgage or deed of trust conveying personal or real property owned by the corporation."

In the deed made back to the Y. & B. Corporation by J. A. Yarborough and wife, on 29 April, 1927, is the following: "Except the lien of a deed of trust executed by J. A. Yarborough and wife to P. C. Whitlock and J. Arthur Henderson, trustees, dated 28 April, 1927, securing $50,000, *which said indebtedness the party of the second part hereby assumes and agrees to pay as part of the consideration for this conveyance.*" The papers carrying out the transactions were in due form and immediately recorded. That the $50,000 note and deed of trust securing

same were duly transferred and assigned by the Home Real Estate and Guaranty Company to the National Mortgage Company of New York, for value and without recourse, except as set out in the contract between National Mortgage Corporation and Home Real Estate and Guaranty Company, dated 29 April, 1926, and that the Home Real Estate and Guaranty Company forwarded to said National Mortgage Corporation the original note, the original deed of trust to secure said note, with the certificate of register of deeds showing 3 May, 1927, to be the date it was filed for record, the opinion of Whitlock, Dockery & Shaw that said deed of trust constituted a valid first lien on said real property, the financial statement of J. A. Yarborough showing his net worth to be $226,800 and the appraisal of said real property. National Mortgage Corporation, relying upon the validity of said deed of trust as a first lien on said real property, and the opinion of Whitlock, Dockery & Shaw that it constituted a valid first lien on said property, and upon the truthfulness of the financial statement of J. A. Yarborough, and upon the appraisal of said real property purchased said note and security from Home Real Estate and Guaranty Company, and paid to it as a consideration therefor the sum of $50,000 on 11 May, 1927. That Y. & B. Corporation on 11 May, 1927, received from Home Real Estate and Guaranty Company through a check endorsed by J. A. Yarborough the sum of $50,000 for the said note of J. A. Yarborough and Josephine Yarborough, secured by said deed of trust, the sum of $30,010 thereof having been applied to the payment, satisfaction and cancellation of a note for $30,000 owed by Y. & B. Corporation to the American Trust Company, of Charlotte, N. C., and to the cancellation of a deed of trust on said real estate from said Y. & B. Corporation to T. E. Hemby, trustee, securing the payment of said $30,000 note and interest and the remainder of said loan having been immediately received by Y. & B. Corporation, less brokerage and commissions, and placed to its credit in the American Trust Company, of Charlotte, N. C., and used by the Y. & B. Corporation in the ordinary course of its business. That the National Mortgage Corporation, after receiving said note and deed of trust from the Home Real Estate and Guaranty Company, sold the same to the Guardian Life Insurance Company, and on 12 May, 1927, transferred and assigned said note and deed of trust to the said Guardian Life Insurance Company for $50,000, and that the said Guardian Life Insurance Company has been ever since the said transfer and is now the bona fide owner and holder of said note and the security therefor. That at the time of the payments by the National Mortgage Corporation and the Guardian Life Insurance Company, neither of them had any actual knowledge that the said loan was made for the benefit of the Y. & B. Corporation, and said payments were made by them in the belief that

the note and deed of trust were the individual note and deed of trust of J. A. Yarborough and Josephine Yarborough, his wife, but both of said corporations were charged with notice of whatever the records in the register's office in Mecklenburg County would disclose as to the title of said real estate of Y. & B. Corporation described in the deed of trust received from J. A. Yarborough and whatever is referred to in the deed of trust itself. The deed from Y. & B. Corporation to J. A. Yarborough, the deed of trust from J. A. Yarborough and Josephine Yarborough, his wife, to P. C. Whitlock and J. Arthur Henderson to secure the payment of the note for $50,000, payable to Home Real Estate and Guaranty Company and the deed from J. A. Yarborough and wife, Josephine Yarborough, to Y. & B. Corporation, each of which were filed for record 3 May, 1927, were freely and openly made in good faith, and without actual or constructive fraud, and J. A. Yarborough derived no personal benefit from the transaction, but the Y. & B. Corporation received the full benefit of the loan. That W. J. Shuford, receiver of the Y. & B. Corporation, on 15 December, 1927, paid the first semi-annual installment of interest on said loan in full and his action was thereafter reported to the Superior Court of Mecklenburg County. That on 4 June, 1928, the receiver filed a petition in said cause requesting the court to make an order allowing him to pay the second installment of interest, which fell due on 28 April, 1928, and also the first installment of principal which fell due on the same date. That the resolution, in part heretofore set forth, was duly passed at a duly called and properly constituted meeting of the board of directors of the Y. & B. Corporation, held on 13 September, 1926, as shown by the minutes of the corporation. That the resolution in reference to this loan was not passed at a duly called and properly constituted meeting of the board of directors of the Y. & B. Corporation, held on 30 April, 1927. That in reality no meeting was held at that time and no such resolution was passed by the directors, but the certified copy of such resolution was presented to the attorneys of the lender and a copy thereof spread on the minutes of the corporation. That the action of the officers of the Y. & B. Corporation in borrowing said money from the Home Real Estate and Guaranty Company and securing same by a deed of trust on the property at the corner of South Caldwell and East Fourth streets in the city of Charlotte was acquiesced in by said corporation, and it received and enjoyed the full benefit of the $50,000, which had been obtained by the apparent authority of its officers, if not by the real authority of the directors. That the directors of said corporation left the management of its business largely in the hands of J. A. Yarborough, its president, and particularly left to him the business of securing funds for the corporation. That by deed of trust, dated 6 October, 1927, registered in

Book 678, page 300, Y. & B. Corporation conveyed to H. C. Alexander, trustee, to secure an indebtedness of $15,000 due to Industrial Loan and Investment Bank, in which deed of trust the Y. & B. Corporation recognized the deed of trust to P. C. Whitlock and J. Arthur Henderson, on the same property securing said note of $50,000, payable to Home Real Estate and Guaranty Company filed for record 3 May, 1927, to be a valid first deed of trust on said real property. On 6 October, 1927, a resolution on the minutes of the Y. & B. Corporation authorized the officers to borrow $15,000 from The Industrial Loan and Investment Bank of Charlotte, N. C., by deed of trust on the property in controversy. In said resolution is the following: "The said deed of trust to be a lien thereon subject only to the deed of trust dated 28 April, 1927, registered in Book 650, at page 19, to P. C. Whitlock and J. Arthur Henderson, trustees, securing the payment of an indebtedness of $50,000 upon the terms therein provided. N. J. Orr, being first sworn, says: 1. That the board of directors of the Y. & B. Corporation at the principal office of the corporation, at a meeting duly called and convened 6 October, 1927, all of the members of said board of directors being present in person, by unanimous vote adopted a resolution of which the foregoing is a copy. 2. That he is the secretary of the Y. & B. Corporation. 3. That the foregoing is a true and exact copy of the resolution adopted by the board of directors at the time and place aforesaid as the same appears in the minute book containing a record of the meeting of the board of directors of the Y. & B. Corporation. This the 7th day of October, 1927. N. J. Orr (Seal). The Y. & B. Corporation, Charlotte, N. C. (Sworn to and subscribed before me this 7 October, 1927. Thos. C. Hayes, N. P. My Commission expires 28 February, 1929 (Seal).)" That the Y. & B. Corporation in accepting and having recorded the deed of reconveyance by J. A. Yarborough and wife, in assuming the payment of the $50,000 deed of trust in said deed, in receiving the $50,000 and using same for corporate purposes, and particularly in using $30,000 of the money in paying off the American Trust Company deed of trust on this same property, by recognizing this $50,000 deed of trust in giving a later deed of trust on the same property, and by other acts, ratified the acts of J. A. Yarborough in this matter. That the Y. & B. Corporation, in resorting to the three conveyances instead of a direct trust deed in borrowing the money, did so in order to meet the requirements of the lender who would not lend money to a corporation on its mortgage or deed of trust, and that in this transaction neither the borrower nor lender did so to evade the Consolidated Statutes of North Carolina, sections 1138, 1140 or the public policy of the State. The three conveyances are equivalent to a mortgage by the Y. & B. Corporation and, therefore, would be subject to the rights of judgment creditors, if any,

under those sections. From the findings of fact by the court below, supported by the evidence, we think, under all the facts and circumstances of this action, the transactions complained of by the receiver were not void, and if only voidable were ratified by the Y. & B. Corporation.

In *Mfg. Co. v. Bell,* 193 N. C., at p. 371, the following principle is laid down: "The controlling principles of law with respect to validity of deeds made by a corporation to its officers or directors may be summarized as follows: 1. The conveyance of the property must be authorized by the corporation or ratified by it. 2. The law presumes that such conveyances are invalid and imposes upon the purchaser the burden of establishing that the purchase is fair, open and free from imposition, undue advantage, actual or constructive fraud. 3. Such conveyances will not be declared void as a matter of law, but it is a question for the jury to determine upon all the evidence as to whether the vitiating elements enter into the particular transaction."

The court below found the facts, and there is evidence to support the findings, that the conveyances were not only authorized by the Y. & B. Corporation, but ratified by it. That the Guardian Life Insurance Company, the claimant, was the bona fide owner and holder of the $50,000 note and deed in trust securing same. That the transaction was freely and openly made in good faith, the corporation receiving full value, and there was no actual or constructive fraud; that the transactions were ratified by the Y. & B. Corporation and Yarborough derived no personal benefit from the loan, but the Y. & B. Corporation was benefited.

We think that the principle as to estoppel against innocent third persons is correctly stated and supported by abundant authority in Fletcher's Cyc. Corp., Vol. 3, part sec. 1894, p. 3081-2: "It is doubtless true that where a contract is executory, it cannot be specifically enforced nor can an action for damages for breach thereof be brought, where it was authorized at an irregular meeting of the directors, unless it has been duly ratified, or the acts of the stockholders are such as to constitute an estoppel. But where the contract has been executed by the other party thereto, a different question arises. In such a case the rule laid down in a former chapter as to the effect of the informalities in executing a corporate contract governs, and it is held that the corporation which has received the benefits of the contract cannot set up that the director's meeting which authorized it was irregular in some respects. The rule is that illegality or irregularity in a directors' meeting cannot be set up to defeat the rights of innocent third persons dealing with the corporation, since, in the absence of notice to the contrary, they have a right to assume that the proceedings were legal and regular—that notice was given, that a quorum was present, that the meeting was called

in the mode prescribed by the charter or by-laws, etc. Thus, want of notice of a special meeting to one or more directors does not affect the validity of acts or contracts of the corporation at such a meeting, so far as third persons dealing with the corporation are concerned, since they have a right to assume that the meeting was regular. In other words, one dealing with a corporation cannot be affected by a failure of the corporate agents to observe the rules and regulations enacted for the internal management of the corporate affairs, especially where such regulations are contained in by-laws as distinguished from those contained in statutes or the charter, on the theory already noticed in a preceding chapter that mere informalities cannot be availed of by the corporation where the other party to the contract has performed his part of the contract. However, there may be constructive notice of the defects."

In *Clowe v. Pine Product Co.*, 114 N. C., at p. 309, we find the following: "It was held in *Curtis v. Piedmont Co.*, 109 N. C., 401, that this statute was applicable to executory and not executed contracts. And this upon the sound doctrine that the defense of *ultra vires* will not avail when the contract itself has been in good faith fully performed by the other party, and the corporation has had the full benefit of the contract. 2 Beach Pr. Cont., section 424." *Mershon v. Morris*, 148 N. C., 49; *Mfg. Co. v. Buggy Co.*, 152 N. C., 633; *Bank v. Oil Co.*, 157 N. C., 302.

In *Paper Co. v. Chronicle*, 115 N. C., at p. 145, the law is stated: "It is well settled that corporations, other than railroad corporations, have a general power to mortgage their property, unless there is some provision in their charters expressly prohibiting or regulating this right. 'The right to mortgage is a natural result of the right to incur an indebtedness.' Cook on Stock and Stockholders, 760-779. Even where the charter provides as to how the assent of the stockholders is to be given, and this is not strictly followed, 'such a provision is regarded as intended for the protection and security of the stockholders, and in the absence of fraud and objection upon their part, defects in the proceeding by which the assent is given cannot be made to invalidate the mortgage, unless they are of such a substantial character that the giving of the assent cannot be inferred. . . . Other corporate creditors cannot raise this objection to the mortgage.' Cook, *supra*, note 2, and the authorities cited."

In *Edwards v. Supply Co.*, 150 N. C., at p. 172-3, it is held: "It would have been otherwise if at the time the money was authorized to be borrowed the company had authorized the mortgage to be executed to secure its officers, who agreed to sign the note as endorsers. In such case the money received would have balanced the debt secured and would have paid off that amount of prior debts to others or would otherwise have

aided the business of the company. Such arrangements are often neces-
sary, and when bona fide are valid. *Banking Co. v. Lumber Co.,* 91
Ga., 624, cited and approved; *Hill v. Lumber Co.,* 113 N. C., 179."

In *Morris v. Basnight,* 179 N. C., at p. 301-2, it is written: "The con-
tract to convey is sufficient in form, and, having been executed by the
general manager of the company, apparently within the course and
scope of his powers, and in the line of the company's business, is prima
facie binding on the company. *Bank v. Oil Mill,* 157 N. C., 302;
*Clowe v. Imperial Pine Product Co.,* 114 N. C., 304. And, if it were
otherwise, the company having acquired the plaintiff's interest in his
father's land and the timber thereon under and by virtue of the act of
the secretary and general manager, are concluded on this question. They
will not be allowed to accept and hold the benefits of the agreement and
repudiate the authority of the agent by whom it was made. *McCracken
v. R. R.,* 168 N. C., 62-67; *Sprunt v. May,* 156 N. C., 388; *Watson,
Trustee, v. Mfg. Co.,* 147 N. C., 469; 10 Cyc., 1073." *Cardwell v. Gar-
rison,* 179 N. C., 476; *Bank v. Bank, ante,* 477; *Banking & Trust
Co. v. Safety Transit Lines, ante,* 675.

In *Trust Co. v. Rose,* 192 N. C., at p. 678, the matter is thus stated:
"The vice-president and cashier had the power, without special authority
of the board of directors, to execute the bond, and to transfer and assign
the notes, to be held solely for the purpose of saving harmless the sure-
ties on the bond. The bank received the benefit accruing from the
transaction *(Trust Co. v. Trust Co.,* 188 N. C., 766). The transfer and
assignment of the notes were entirely free from any taint of fraud, bad
faith or undue advantage *(Everett v. Staton, ante,* 216); defendants,
although officers and directors of the bank, had no personal interest, and
received no personal benefit from the transactions *(Everett v. Staton,
ante,* 221)."

As to the question of ratification and estoppel, the following is found
in 4 Fletcher Cyc. Corp., sec. 2178, p. 3378, *et seq:* "If the officers of a
corporation or other persons assume to act for the corporation without
any authority at all, or if they exceed their authority or act irregularly,
and the act is one which could have been authorized in the first instance
by the stockholders, board of directors or subordinate officers, as the
case may be, it may be expressly or impliedly ratified by them, and thus
be rendered just as binding, except as to intervening rights of third
persons, as if it had been authorized when done, or done regularly. In
this respect a corporation is subject to substantially the same rules as
a natural person. A corporation 'is governed, like an individual, by the
same principles as to the ratification of the acts of its agents and as to
estoppel *in pais.'* Not only may acts in excess of the authority of a
corporate officer or agent be ratified, but also informal or irregular

acts of corporate officers or agents. If an act or contract of a corporate officer or agent is beyond the scope of his authority, or is invalid because of informalities making the act or contract voidable but not void, the corporation has two courses open to it. If it desires not to be bound thereby, it may escape liability by promptly repudiating the act or contract, after notice thereof, and, if benefits have been received, returning them or otherwise placing the other party in *statu quo*. If it desires to ratify the contract, it may either expressly ratify it or impliedly ratify it by conduct. . . . (p. 3389.) And knowledge upon the part of the corporation will be presumed from slight circumstances where it has had the benefit of the contract. . . . (p. 3403-4.) But, as in case of ratification by a natural person, it may by parol, or may be implied from the conduct of the corporation, or of officers having authority to ratify, in accepting the benefits, with knowledge of the facts, or otherwise treating or recognizing the contract or act as binding; and under some circumstances it may be implied from a mere failure to repudiate or disaffirm the same. As in case of a ratification by an individual, the ratification may be express or implied. If implied, it may result from (1) accepting and retaining the benefits of the act or contract, (2) silence or acquiescence, or (3) other affirmative acts showing an adoption of the act or contract. There need not be any formal action of the board of directors, and the ratification need not be express nor shown by vote or resolution of the board of directors. . . . (p. 3411-15). As a general rule, if a corporation, with knowledge of the facts, accepts or retains the benefit of an unauthorized contract or other transaction by its officers or agents, as where it receives and uses or retains money or property paid or delivered by the other party, or accepts the benefit of services, etc., it thereby ratifies the contract or other transactions, or will be estopped to deny ratification. This rule is based upon the doctrine of ratification *in toto*, under which a principal must either ratify the whole transaction or repudiate the whole. He cannot separate the transaction and ratify the part that is beneficial to him, repudiating the remainder; but if he, of his own election and with full knowledge, accepts and retains the benefit of an unauthorized transaction, he must also accept the part that is not beneficial and will be held to have ratified the whole." *Greenleaf v. R. R.,* 91 N. C., 33; *Lewis v. R. R.,* 95 N. C., 179; *Hill v. R. R.,* 143 N. C., 539; *Watson v. Mfg. Co.,* 147 N. C., 469; *Bank v. Drug Co.,* 152 N. C., 142; *Anderson v. Corp.,* 155 N. C., at p. 135; *Phillips v. Land Co.,* 176 N. C., 514.

The case of *Duke v. Markham,* 105 N. C., 131, relied on by the receiver is not applicable to the facts in this case. In that case the assent to the mortgage was expressed elsewhere than at a meeting and no corporate seal was attached to the mortgage. The probate was also insuffi-

cient and did not authorize registration and was ineffectual to pass title as against creditors. The mortgage was invalid, being void. It is further said in the case of *Duke v. Markham, supra,* at p. 136: "It is true the common seal is prima facie evidence that a deed or contract is the act of the company, and that the seal has been affixed by authority, though it is competent to go behind the seal and show that it was not affixed by legally exercised authority of the company. In this case there was no common seal of the company attached. While a seal is not essential to the validity of a chattel mortgage, in the absence of the company's seal there is no presumption of its being the corporation's act, and it devolved upon the party relying upon the mortgage to show that the agent or officer had authority to execute it. . . . (p. 137.) The receipt and use of the money is not of itself, as we have seen, a sufficient ratification by the corporation. But it is immaterial here whether there was a subsequent ratification or not. Ratification would be good between the corporation and the mortgagee, but would not validate, as to other creditors, a mortgage which was invalid when registered." *O'Neal v. Wake County,* 196 N. C., 184, is in relation to counties making contracts, and this is regulated by statute.

It will be noted that $30,000 of the $50,000 was used to pay off a lien to T. A. Hemby, trustee, for the American Trust Company. The doctrine of subrogation is invoked by the claimant, Guardian Life Insurance Company.

In *Pub. Co. v. Barber,* 165 N. C., at p. 487-8, it is said: "The doctrine is one of equity and benevolence, and, like contribution and other similar equitable rights, was adopted from the civil law, and its basis is the doing of complete, essential, and perfect justice between all the parties without regard to form, and its object is the prevention of injustice." *Jeffreys v. Hocutt,* 195 N. C., 339.

In *Morgan v. Gollehon,* 149 S. E., at p. 486 (Va.), speaking to the subject, *Prentis, C. J.,* said: "The weight of authority, however, as is shown in the note to 5 Pomeroy's Equity Jur. (2 ed.), p. 5193, sec. 2347, and the modern cases support the view that subrogation is generally allowed where the loan was made by one who took a security from the borrower which turned out to be invalid," citing numerous authorities.

In 25 R. C. L., subrogation, part sec. 26, p. 1343, we find: "It is well settled that where the security given for the loan which is used to pay off an encumbrance turns out to be void, although the person taking it expected to get good security, he will be subrogated to the rights of the holder of the lien which the money advanced is used to pay; and that in such case the person advancing the money cannot be regarded as a stranger or volunteer, there being no intervening equity to prevent."

The receiver contends that this deed in trust to T. A. Hemby, trustee, was also invalid, but from the facts found by the court below and the position here taken, we cannot so hold. The temporary arrangement to cancel the $30,000, so that the $50,000 could be obtained, does not affect the right of subrogation from the facts in this case.

Even in the case of *Duke v. Markham, supra,* it was held "that the common seal is prima facie evidence that a deed or contract is the act of the company and that the seal has been affixed by authority, though it is competent to go behind the seal and show that it was not affixed by legally exercised authority of the company." This prima facie evidence was for the court below to consider, as the agreement was to the effect that the facts were to be found by the court below. The receiver made numerous exceptions and assignments of error to the effect that the findings of the court below were not supported by any evidence in the case, but that every such finding of fact was contrary to the evidence. That the court below from the evidence should find certain facts setting them out, that every conclusion of law found by the court below was not warranted by the facts and contrary to law. All of which from the position here taken we cannot subscribe to. These exceptions and assignments of error cannot be sustained.

We think the court below had sufficient evidence to find that the claimant was a bona fide purchaser for value, without notice of any defects in this transaction; that the transaction was not void but voidable; that it was authorized and ratified; that the matter was freely and openly made in good faith, without actual or constructive fraud, and that the corporation received full value.

It is well settled in *R. R. v. Comrs.,* 188 N. C., at p. 267: "A party having notice must exercise ordinary care to ascertain the facts, and if he fail to investigate when put upon inquiry, he is chargeable with all the knowledge he would have acquired had he made the necessary effort to learn the truth of the matters affecting his interests. *Wynn v. Grant,* 166 N. C., p. 45." *Mills v. Kemp,* 196 N. C., at p. 314. We do not think this principle applicable in this case.

The receiver representing the general creditors, we do not think, can complain. The general creditors no doubt in giving credit trusted this corporation which now appears woefully insolvent. Those who give credit to corporations and others should do so with due care and upon thorough investigation. It appears from the findings of the court below, supported by evidence, that the claimant here and those through whom it claims relied upon the resolution of the Y. & B. Corporation and corporate conveyances in due form, approved by attorneys of unquestioned ability and integrity, that it would have a first lien on the property in

controversy as a security for its loan. The transactions being in good faith and free from fraud and ratified; the Y. & B. Corporation receiving full value, claimant was looking to the security and loaned the money on the faith of the security—the general creditors did not look to any security. From the findings of fact the loan transaction was carried out in good faith and without fraud, the Y. & B. Corporation receiving full value—the $50,000.

From the findings of fact in this case by the court below, supported by evidence, it would be contrary to equity for the court to allow the receiver of the Y. & B. Corporation to retain the $50,000, which the corporation received the benefit of, and avoid the lien now held by a bona fide purchaser for value without notice, made in good faith and without fraud and prima facie regular and valid—the resolution in due form giving authority. The conveyances were duly executed and recorded in accordance with law and afterwards ratified. This is a contest between an innocent third party and the corporation, upon an executed contract— the corporation receiving the benefit. A court of equity is not disposed to disturb an executed contract, where the person or corporation has received full value, where the transaction is bona fide, free from fraud and where there is no mutual mistake. This is not a contest between the members of the corporation.

We may add that this Court has thoroughly considered this action for a long time, recognizing its importance. We find in law

No error.