This is an action, first, to have a contract entered into by and between the president and general manager of the plaintiff corporation, and the defendant, for the purchase from the defendant of certain shares of the common stock of another corporation, for and in behalf of the plaintiff, adjudged void, and of no binding force or effect insofar as the plaintiff is concerned, for that said contract was not authorized by its board of directors, or by its stockholders; second, to have certain paper-writings executed in the name of the plaintiff corporation by its president, and attested by its secretary, purporting to bind the plaintiff by its guarantee that certain certificates for preferred stock, of the par value of $200,000, issued to defendant by the corporation, whose common stock had been purchased for and transferred to the plaintiff, pursuant to the provisions of said void contract, would be redeemed by said corporation, in cash, at par, and on a fixed date, ordered surrendered and canceled, for that the execution of said paper-writings in its name by its president *Page 104 
was not authorized by the board of directors, or by the stockholders of plaintiff corporation; and, third to recover of the defendant the sum of $50,000, paid to defendant, out of the funds of the plaintiff, by its president, pursuant to the terms of said void contract.
The facts admitted in the pleadings or shown by the evidence offered at the trial, are as follows:
On or about 1 November, 1925, Walter P. Taylor, at said date, and for several years prior thereto, the president and general manager of the plaintiff corporation, after negotiations which were known to the members of its board of directors, and to its stockholders, purchased from the defendant, Don S. Elias, for the plaintiff, three hundred shares of common stock of the Southern Steel and Cement Company, a corporation organized under the laws of this State, and caused the certificates for said shares of stocks to be duly transferred to the plaintiff. In payment of said shares of stock, the said Walter P. Taylor, as president and general manager of the plaintiff corporation, caused its check for $50,000, to be drawn and delivered to the defendant. This check was duly paid by the bank on which it was drawn, and charged to the account of plaintiff by said bank. The said Walter P. Taylor, as president and general manager of the plaintiff corporation, further caused certificates for 2,000 shares of the preferred stock of plaintiff corporation, of the par value of $200,000, to be issued and delivered to the defendant, with the guarantee of plaintiff that it would redeem said certificates in cash, at par, on 1 November, 1930, upon tender of same by defendant, to the plaintiff. As the result of said contract of purchase, defendant sold and delivered to plaintiff corporation three hundred shares of the common stock of the Southern Steel and Cement Company, receiving therefor as aforesaid the sum of $250,000. Certificates for said shares of stock were duly transferred to plaintiff, and dividends thereafter declared by the Southern Steel and Cement Company, out of its earnings, were paid to the plaintiff, as the owner of said shares of stock.
After said purchase had been completed, pursuant to an agreement in writing thereafter executed in the name of the plaintiff corporation, by Walter P. Taylor, as its president, and attested by D. G. Devenish, as its secretary, with its corporate seal attached, the defendant surrendered the certificates for 2,000 shares of the preferred stock of plaintiff corporation theretofore issued to him, and accepted in lieu thereof certificates for 2,000 shares of the preferred stock of the Southern Steel and Cement Company, of the par value of $200,000. Pursuant to said agreement, there was attached to each of said certificates, a paper-writing executed in the name of the plaintiff corporation by Walter P. Taylor, its president and attested by D. G. Devenish, its secretary, in words as follows: *Page 105 
"State of North Carolina — County of Buncombe.
The undersigned hereby guarantees the redemption by cash, of certificate No. _____, of the Southern Steel and Cement Company's preferred stock attached hereto, at par, plus accrued dividends on 1 November, 1930, provided notice and demand by registered mail is given to us at least 30 days prior thereto.
 CITIZENS LUMBER COMPANY, By _____________, President. Attest: ___________________, Secretary."
Plaintiff is a corporation organized in 1912 under the laws of this State, with its principal office and place of business in Buncombe County. During the year 1925, and for several years prior thereto, plaintiff was and had been engaged in the business of buying, selling and dealing in building materials and supplies of all kinds, as it was authorized to do by its certificate of incorporation. It was authorized by its certificate of incorporation, not only to engage in said business, but also to purchase the business of any person, firm or corporation engaged in the same business. Prior to 1925, under this authority, plaintiff had purchased and operated the business of other corporations and thereby earned and paid in dividends to its stockholders large sums of money. Such purchases had been made by the said Walter P. Taylor, as president and general manager of the plaintiff corporation.
During the year 1925, and for several years prior thereto, Walter P. Taylor was and had been the president and general manager of the plaintiff corporation. Its business had grown in volume and prospered under his management, and its stockholders and board of directors had entrusted to him the full control and management of said business. They had implicit confidence in his business judgment, and relied upon the same without question. He was the owner of a large number of the shares of the common stock of plaintiff, and by reason of such ownership, as well as by reason of his official relations to the plaintiff, was interested in its success.
During the year 1925, and for several years prior thereto, the Southern Steel and Cement Company, a corporation organized under the laws of this State, with its principal office and place of business in the city of Asheville in Buncombe County, was and had been engaged in the business of buying, selling and dealing in building materials and supplies of all kinds. It was a competitor in business of the plaintiff. The defendant, Don S. Elias, was the principal stockholder of said Southern Steel and Cement Company, and as such controlled its business. Walter P. Taylor purchased his stock, as well as the stock of another stockholder, *Page 106 
for and in behalf of the plaintiff, and after such purchase the business of the said Southern Steel and Cement Company was conducted in the interest of the plaintiff, as the owner of its common stock.
Neither the purchase of defendant's stock in the Southern Steel and Cement Company, nor the guarantee of the redemption of its preferred stock, by the paper-writings attached to the certificates issued to defendant, was authorized by resolutions adopted by the board of directors or by the stockholders of plaintiff corporation. The members of the said board of the directors, who were the owners of practically all the common stock of the plaintiff corporation, were advised by Walter P. Taylor of the negotiations between him, as its president and general manager, and the defendant, for the purchase of the shares of the common stock of the Southern Steel and Cement Company owned by the defendant, and knew that said purchase had been made, and that said stock had been acquired and was owned by plaintiff. No objection was made by the said directors and stockholders to the purchase of said stock at any meeting of said board of directors or of said stockholders, or at any other time, until a special meeting held at the office of the plaintiff, on 24 September, 1928. Shortly before said meeting members of the said board of directors learned for the first time that Walter P. Taylor, as president of the plaintiff corporation, in addition to the payment to defendant of the sum of $50,000, and the issuance to him of certificates for 2,000 shares of the preferred stock of the Southern Steel and Cement Company, in payment of the common stock purchased from defendant, had executed the paper-writings purporting to guarantee the redemption of said certificates, in accordance with the terms therein set out. At said meeting held on 24 September, 1928, resolutions were adopted, repudiating the contract by which the shares of common stock of the Southern Steel and Cement Company were purchased by Walter P. Taylor from the defendant, and also repudiating the contracts with respect to the redemption of said certificates for preferred stock.
At a meeting of the board of directors of the plaintiff corporation, held subsequent to the meeting at which said resolutions were adopted, the said board of directors by resolution duly adopted, ordered and directed that the certificates for the three hundred shares of the common stock of the Southern Steel and Cement Company, purchased from the defendant by Walter P. Taylor, and then owned by the plaintiff, be sold, assigned and delivered to the said Walter P. Taylor, upon the transfer by him to the plaintiff of a like number of the shares of the common stock of the plaintiff. Pursuant to this resolution, the said certificates were thereafter sold, assigned and delivered to the said Walter P. Taylor, who in payment for same transferred and assigned certificates for the like number of shares of the common stock of plaintiff, *Page 107 
to the plaintiff. At the commencement of this action, plaintiff did not own the shares of the common stock which had been sold and transferred to it by defendant, pursuant to the contract made with defendant by Walter P. Taylor, as president and general manager of plaintiff, on or about 1 November, 1925. Although plaintiff has an option to repurchase said stock from Walter P. Taylor, it has not repurchased them. Walter P. Taylor now owns said stock, having purchased same from plaintiff. The stock is held by a bank, in escrow, to be delivered to plaintiff when and if it shall exercise its option to repurchase same.
At the close of all the evidence, defendant's motion that the action be dismissed as of nonsuit was allowed.
From judgment dismissing the action the plaintiff appealed to the Supreme Court.
It is not alleged in the complaint, nor was it contended at the trial of this action, that the contracts entered into by and between the president and general manager of the plaintiff corporation, and the defendant, for the purchase from defendant of shares of the common stock of the Southern Steel and Cement Corporation, and for the payment of the purchase price for said stock in accordance with the terms of the contract of purchase were ultra vires, and therefore void and of no binding force and effect on the plaintiff. It is expressly provided in the certificate of incorporation of the plaintiff, that in order that plaintiff may properly prosecute the business in which it was authorized therein to engage, "the said corporation shall have full power and authority to purchase, lease and otherwise acquire, hold, mortgage, convey and otherwise dispose of all kinds of property, both real and personal, both in this State and in all other States, territories, and dependencies of the United States; to purchase the good will, business and all other property of any individual, firm, or corporation, as a going concern, and to assume all its debts, contracts and obligations, provided said business is authorized by the powers herein conferred." The Southern Steel and Cement Company was a corporation organized under the laws of this State and, by virtue of the powers and authority conferred upon it as a corporation by its certificate of incorporation, was engaged in the identical business as that in which the plaintiff was and had been engaged at and prior to the date of said contracts. Therefore the contracts to purchase from the defendant the common stock of said corporation, and to pay for the same, in accordance with the contract of purchase, and thus *Page 108 
acquire control of its business, were within the express power conferred upon plaintiff as a corporation. In addition to this express power, conferred upon plaintiff by its certificate of incorporation, the plaintiff, as a corporation organized under the laws of this State, has the power, by virtue of C. S., 1166, to "purchase stock, securities, and other evidences of indebtedness created by any other corporation or corporations of this or any other state, and while owner of such to exercise all the rights, powers and privileges of ownership."
It is not alleged in the complaint nor was it contended at the trial of this action that the contracts entered into by and between the president and general manager of the plaintiff corporation, and the defendant, for the purchase from defendant of shares of the common stock of the Southern Steel and Cement Company, and for the payment of the purchase price for said stock, in accordance with the terms of the contract of purchase, were fraudulent, or not in good faith. All the evidence is to the effect that in entering into said contracts, the president and general manager of the plaintiff, and the defendant, both acted in good faith, and with no purpose to defraud the plaintiff. Indeed, but for the business depression which has occurred since the date of said contracts, it does not appear that they were not in the interest of the plaintiff. No complaint was made by the directors and stockholders of plaintiff until after the business of both the plaintiff and the Southern Steel and Cement Company had fallen off in volume as the result of business conditions in Buncombe County and elsewhere.
The question, therefore, presented for decision by this appeal is whether the president and general manager of a corporation organized under the laws of this State, who by virtue of his office has full control and management of the business of said corporation, may, without express authority conferred by resolution of the board of directors or of the stockholders of said corporation, adopted in a meeting of said board or of said stockholders, purchase the stock of another corporation, for and in the name of his corporation, and bind the same by contracts in its name for the payment of the purchase price for said stock, where the purchase of said stock is within the corporate powers of his corporation, and is made in good faith for its benefit and in its interest.
It is well settled that the general manager of a corporation has larger and broader power than its president. Ordinarily, the president of a corporation has no power to bind the corporation by contracts executed by him in its name, without the express authority of its board of directors. Contracts made by him, without such authority, are not binding upon the corporation, and unless ratified by its board of directors or by its stockholders, cannot be enforced against the corporation. "Aside from his position as presiding officer of the board of directors and of the *Page 109 
stockholders when convened in general meeting, the president of a corporation, has by virtue of his office, merely, no greater power than that of a director. Whatever authority he has must be expressly conferred on him by statute, charter, or by-law, or the board of directors, or be implied from express powers granted, usage or custom, or the nature of the company's business. He may be, and frequently is, made the chief executive officer of the company and invested with broad general powers of management and superintendence; and in such case he necessarily has many implied powers." 14a C. J., 93, sec. 1858(3).
When the by-laws of a corporation provide for the election by the board of directors of a general manager of the corporation, and the board of directors by virtue of such provision, have elected a general manager, as in the instant case, in the absence of limitations upon his authority in the by-laws or by the action of the board of directors, he has the power to bind the corporation by contracts made in good faith, and within the corporate powers, without any resolution of the board of directors expressly authorizing the contracts. Supply Co. v. Machine, 150 N.C. 738,64 S.E. 887. In Morris v. Basnight, 179 N.C. 298, 102 S.E. 389, it is said: "The contract to convey is sufficient in form, and having been executed by the general manager of the company, apparently within the course and scope of his powers, and in the line of the company's business, is prima facie binding on the company. Bank v. Oil Mill, 157 N.C. 302,73 S.E. 93; Clowe v. Imperial Pine Products Co., 114 N.C. 304,19 S.E. 153."
Again in Watson v. Mfg. Co., 147 N.C. 469, 61 S.E. 273, it is said: "The management of the entire business of a corporation may be entrusted to its president either by express resolution of the directors, or by their acquiescence in a course of dealing." Brown, J., writing the opinion in this case, quotes with approval from Thompson on Corporations as follows: "A stranger dealing with the corporation is not affected by secret restrictions upon his (such manager's) powers of which he has no notice. In short, the powers of one who has been appointed general manager of the business of the corporation are, in America, generally understood to be coextensive with the general scope of its business." In the instant case there was no restriction, secret or otherwise, upon the powers of the president and general manager of the plaintiff corporation. The contracts challenged by this action were similar to other contracts theretofore made by him, the validity of which had never been questioned by the corporation.
"The general manager of a corporation has general charge, direction and control of the affairs of the company for the carrying on of which it was incorporated. He is to be distinguished from a person who has the management of some particular branch of the business. While it *Page 110 
is said that he is virtually the corporation itself, and that his implied powers are coextensive with the general scope of the business of the corporation, yet the ultimate control rests with the board of directors. The office of the general manager is of broader import than that of president. The fact that a person having an active conduct of the business of a corporation is also its president does not operate as a limitation upon the powers usually exercised by its general agents or managers. His authority is not limited to that possessed by virtue of his office as president, but is incidental to the management of the business." 14a C. J., 94, sec. 1862(9). See, also, 7 R. C. L., 628, section 627 where it is said: "At the present time the general business of corporations is frequently entrusted to the management of a general manager, and it is well recognized that the corporation is bound by the acts of such manager within the apparent scope of his authority. The fact that a person having the general direction and active conduct of the business of a corporation is also its president does not operate as a limitation of the powers usually exercised by such agents or managers. His authority is not limited to that possessed by virtue of his office as president, but is incident to the management of the business."
Without regard to the facts shown by all the evidence, tending to show that the board of directors and the stockholders of plaintiff corporation, ratified the contracts made by its president and general manager with the defendant, with respect to the purchase of the shares of common stock of the Southern Steel and Cement Company and for the payment of the purchase price for such shares of stock, we are of opinion that plaintiff cannot recover in this action for that the said contracts were valid and binding on the plaintiff. Even if the contracts were not authorized, all the evidence shows that they were subsequently ratified by the corporation, and are therefore binding upon it. The corporation accepted the benefits of the contract of purchase, with full knowledge on the part of the directors that the stock had been purchased from defendant by its president and general manager, and sold and transferred the certificates for same after the directors were fully advised of the guarantee of redemption in the name of the corporation of the preferred stock of the Southern Steel and Cement Company issued to the defendant in part payment of the purchase price of the stock. See Weathersby v. Texas Ohio Lumber Co., 107 Tex. 474,180 S.W. 735, 7 A.L.R., 1440 and note, in which it is said by the annotator that "it is well established that when an officer, without authority so to do, enters into a contract for a corporation, and the corporation receives and retains the benefits of the contract after acquiring knowledge of the circumstances attending its execution, it thereby ratified the contract and makes it good by adoption." See, also, Morris v. Y. B. Corporation, *Page 111 198 N.C. 705, where the principles upon which the doctrine of ratification are founded and the decisions of this and other courts, applying these principles, are fully discussed by Clarkson, J.
The judgment dismissing the action, at the close of the evidence, on motion of defendant under C. S., 567, is
Affirmed.