## W. T. DONNELL v. CURRIE & DOHONEY.

Decided June 30, 1910.

**1.—Pleading—Demurrer.**

Exceptions addressed to specific allegations of plaintiffs' petition, if attacking the substance, and not the manner and form thereof, are in effect general and not special demurrers.

**2.—Same—Agency.**

Allegations of the authority of one making a contract to sell land, to bind the owner thereby as his agent for that purpose, considered and held sufficient as against a general demurrer.

**3.—Sale of Land—Agency.**

An agent empowered generally to sell the land of another for a commission, though without authority to convey, may bind his principal by a written memorandum of a sale negotiated by him on the terms authorized to be given so as to render the principal liable for damages to the proposed purchaser if he refuses to comply.

**4.—Same.**

Letters concerning a sale of land considered and held to constitute authority from the owner of land to an agent to make sale of same and execute a written obligation for his principal to perform the agreement. Also memorandum in writing of the terms of sale given by such agent held to constitute a binding contract by the owner to make conveyance, on which he could be held liable to the purchaser for damages from his refusal to comply.

**5.—Written Contract—Parol Evidence.**

Though a contract was in writing, parol evidence may suffice to establish its contents, if received without objection.

Appeal from the District Court of Stephens County. Tried below before Hon. Thomas L. Blanton.

*Kay & Akin,* for appellant.—A real estate broker can not delegate his authority to sell, and where the plaintiff sought to buy land and procured one agent to negotiate with the owner and the owner referred that agent to his agent, the owner's agent, even if he had authority to enter into a written contract of sale, could not delegate his authority to another, and a contract made by such agent acting on delegated authority is void. McCormick v. Bush, 38 Texas, 318; Williams v. Moore, 24 Texas Civ. App., 405.

A real estate agent has no authority to enter into a written contract of sale unless such authority affirmatively and clearly appears. Donnan v. Adams, 30 Texas Civ. App., 615; Donnan v. Adams, 71 S. W., 582-583.

In a suit for damages for breach of contract for sale of land, where no written contract was entered into by the owner, his letter to a land agent, not showing a concluded agreement, not describing the land, and in ignorance of the purchaser's existence, is inadmissible and is not a written memoranda of sale. Cusenbary v. Latimer, 67 S. W., 187; Foster v. Land Company, 2 Texas Civ. App., 515; Patton v. Rucker, 29 Texas, 408.

*W. C. Veale* and *Veale & Davidson,* for appellees.—Defendant's letters of December 29th, 1905, to J. H. Wills and Will A. Miller, gave Wills abundant authority, acting with the approval and consent of the said Miller, the acknowledged agent of defendant, to enter into contract for the sale of the land in question, and allegations to this effect entitled plaintiffs to a trial on the merits. Colvin v. Blanchard, 106 S. W., 323; 19 Cyc., 197, s. c. 21; Vanada v. Hopkins, 19 Am. Dec., 92.

Miller, the undoubted agent of defendant, passed upon and agreed to the entire transaction before it was consummated, and there was no option or discretion left to be exercised by Wills. Under such circumstances a delegation would be valid. 31 Cyc., title, Principal and Agent, p. 1428, pr. c.; Gaither v. O'Doherty, 12 S. W., 306; 23 Am. and Eng. Ency. of Law, p. 899, par. 2.

The court made no error in rendering judgment for plaintiffs on the facts. Lee v. Cherry, 4 Am. St. Rep., 800; Singleton v. Hill, 51 Am. St. Rep., 868; and other cases herein cited.

HODGES, ASSOCIATE JUSTICE.—This suit is one instituted by the appellees to recover damages for the breach of a contract to sell and convey two tracts of land. From the argument it appears that the action was originally one for specific performance, in which others were joined as parties defendant, but by subsequent amendment of the original petition it had been reduced to its present form against Donnell alone. Upon a trial before the court without a jury judgment was rendered in favor of the appellees against Donnell for the sum of $960 as damages. The substance of the defense urged on this appeal is the insufficiency of the pleadings and the evidence to establish a contract in writing enforcible against the appellant. The facts relied on both in the pleadings and in the evidence consisted mainly of the written correspondence between the appellant and his agents and the memorandum made by one of the agents of the sale and its terms at the time it was negotiated.

The first group of assigned errors relates to the action of the court in overruling appellant's general and special exceptions to the amended original petition. While some of those are termed special exceptions, they are in fact only general demurrers to different portions of the petition, as they attack the substance and not the manner and form of the pleading. In view of the fact that the evidence is no more comprehensive than the pleading assailed, those objections may be considered in connection with the assignment which questions the sufficiency of the evidence to support the judgment rendered. The following is a summary of the material portions of the evidence upon which the judgment of the court may be sustained:

In 1905 the appellant, Donnell, was the owner of two sections of land described in the petition, situated in Oldham County. This he had placed upon the market, and had listed it with Will A. Miller, Jr., a real estate agent of Amarillo, Texas. There is also evidence which

justified a finding that it was at the date of the negotiations hereinafter referred to also in the hands of John H. Wills, another real estate agent in the same city. In December, 1905, Wills had an offer of $3.00 per acre for the land from the appellees. This offer Wills communicated to appellant in the following letter:

"Amarillo, Texas, Dec. 19th, 1905.

"W. T. Donnell, Eliasville, Texas.

"Dear Sir—I have your letter September 30th, in regard to selling your land in Oldham County, and note what you say about putting it with other parties. I don't blame you for that; in fact, it is the best thing to do, since I have had to be away so much on account of my wife's health. I have just returned a few days ago from California where I took her for the winter. Of course, you retained the right to sell the land yourself, therefore, I take it that you would entertain an offer from any one. There was a party in today inquiring about land out that way. I told him about your land and that if you had not sold, he might make a trade with you. He finally made me a proposition of $3.00 per acre on your two sections, on terms of one-third cash, balance in one and two years at eight per cent, provided there was no lakes on the land. I told him that he would have to do better than that. He refused to raise it and said I could submit it. So if you care to entertain this you can so advise me and I will try and close it up, provided, of course, you will pay me the usual commission of five per cent if I make the sale. Awaiting your instructions.

"Yours truly,
(Signed)    "John H. Wills."

December 29th, appellant answered as follows:

"Eliasville, Texas, December 29, 1905.

"J. H. Wills, Amarillo, Texas.

"Dear Sir—Yours of the 20th inst. received. Was away from home when it came. As I have left my land in the hands of Will A. Miller, you can see him. I'll take $3.25 per acre, one-third cash, note 1 and 2 years at eight per cent. Writing Miller today in regard to it, and if you and him can divide commission and sell to your man would be glad, as I would like to sell. Am sorry that you had to be away from home account of wife's health.

"Yours very truly,
"W. T. Donnell."

On the same day appellant wrote to Will A. Miller as follows:

"Eliasville, Texas, December 29, 1905.

"Will A. Miller, Jr., Amarillo, Texas.

"Dear Sir—Inclosed a letter from J. H. Wills who had a man that offered $3.00 for my land, but as I have made ends meet will not take

less than $3.25, and if you can make any arrangement with Mr. Wills and sell that land for $3.25, one-third down, balance one and two years, would appreciate it. I referred Mr. Wills to you.

"Yours &c.
(Signed) . "W. T. Donnell."

According to the testimony of Wills, who is not contradicted, he, with the consent of Miller, entered into an agreement with the appellees by which he sold them the land on the terms mentioned in Donnell's letter, and Dohoney, one of the appellees, gave his check for $100, which was accepted by Wills as a part payment of the purchase price. As to this transaction Wills testified as follows: "Acting under the letter attached and made a part of my answer to direct interrogatory No. 4, I made an offer of said land to plaintiffs for $3.25 per acre, one-third cash, balance in one and two years, interest at eight per cent per annum, and said offer was 'excepted' by the plaintiff on January 2, 1906, and at that time the plaintiffs paid me, as part payment on the sale of said land, of $100. This was on January 2d, 1906. . . . I made and executed and delivered to the plaintiffs a memorandum in writing acknowledging receipt of $100 and agreeing that the defendant Donnell would sell the land in controversy to plaintiff. I have attached the said receipt and make the same a part of my answer to this interrogatory and mark the same 'Exhibit K' for identification. . . . I was not the agent in this matter for Currie & Dohoney, but was the agent for the defendant, Donnell. I do not know whether Currie & Dohoney had other lands in the vicinity of the Donnell lands at the time they came to me. I do not know whether they had in negotiation the purchase of a lot of land at this time adjoining the land in controversy. If you understand that the plaintiffs, Currie & Dohoney, came to me and secured my services and help, and that acting for them I undertook these negotiations with W. T. Donnell, you are in error. I had this land for sale and procured Currie & Dohoney to purchase same and wrote to the defendant Donnell and submitted the proposition, and he replied to my letter stating to Will A. Miller that he would take $3.25 for the land, and I submitted this offer to Currie & Dohoney, and they accepted it, and I prepared receipt above described."

After concluding the sale with the appellees, Wills wrote the following letter to Donnell:

"Amarillo, Texas, January 3, 1906.

"Mr. W. T. Donnell, Eliasville, Texas.

"Dear Sir—I am in receipt of your letter of the 29th inst., authorizing me to sell your land in Oldham County, Texas, being sections 1 in block H-1, and section 11, in block K-5, at $3.25 per acre on terms of one-third cash, balance in one and two years, deferred payments, to bear interest at the rate of eight per cent per annum. In reply, have to state I have sold this land as per your letter, to Thos. Currie and E. L. Dohoney, Jr., as shown by enclosed deeds which you can sign and

acknowledge and return to the Amarillo National Bank, with abstract, with instructions to deliver same upon the payment of purchase money and ·delivery of notes duly signed as provided in the deed. You will also instruct the bank to pay Mr. Miller and myself five per cent for making this sale, as we have agreed on a division of the commission. I presume you have paid your taxes for the year 1905. If not, please instruct the bank to pay them, as the abstract will have to show clear title.

"Yours very truly,
(Signed) "John H. Wills."

The letter was received by Donnell, but he declined to execute the deeds, giving as a reason that there was then an outstanding vendor's lien against the land amounting to $1900, and that he would require the purchasers to assume or pay that indebtedness, pay him one-third cash, and execute their notes for the remainder payable in one and two years with eight per cent interest. Upon being notified of that requirement, appellees agreed to assume the $1900 lien, pay in cash one-third of the remainder, and execute their two notes for the rest. This was also declined by Donnell after some further correspondence between him and Miller, and the land was afterwards sold by Donnell to other parties.

There being no conclusions of. law and fact filed by the trial court, we must indulge every reasonable inference from the evidence contained in the record in support of the judgment rendered. Likewise the same liberality of construction should be exercised in considering the sufficiency of the pleadings, inasmuch as their substance only is questioned.

Judging from the line of argument pursued by the parties in their briefs, there were two different conclusions drawn from the facts developed in this case and relied upon as sufficient to sustain the judgment. One is that a written contract consisting of the correspondence between Donnell on the one hand, and Wills and Miller on the other, was established. The other is that the receipt given by Wills to Dohoney for the $100 purchase money paid was a memorandum in substantial conformity with the requirements of the statute of frauds. If either of these conclusions be correct the judgment must be affirmed. Treating both Wills and Miller as the appellant's agents, his letters to them referring to the price and terms upon which the land might be sold should be regarded as mere instructions for their guidance, and not as an offer of sale to a prospective purchaser. Viewed in that light, those letters should not be considered as parts of a written contract, because evidently they were not so intended. But if Wills is to be treated as the agent of the appellees in transmitting to Donnell their offer of $3.00 per acre, and in receiving and accepting the terms proposed by Donnell in reply, we have all the essential elements of a binding contract reduced to writing in the correspondence between Wills and Donnell. However, we think if this judgment is to be sustained it must be done upon the ground that Wills was the agent of the appellant in those negotiations, and that he was authorized to and did, as agent of the appellant, make

an enforcible contract with Dohoney, as the representative of the appellees. Wills testifies that he was the appellant's agent, he purported to act as such, and no one disputed his testimony. Counsel for appellant insists that the petition is defective in that it alleges that Wills was not the agent of the appellant. We do not think this is the necessary construction to be placed upon that pleading. After referring to the correspondence between Wills and Donnell, it says: "That in pursuance of said letter of defendant Donnell and within a short time thereafter plaintiffs, acting for themselves and through the said Wills, called on said Miller and accepted said price and terms for said land so made by defendant Donnell to both said Wills as well as to said Miller, where and when it was agreed by and between said Wills and Miller that said trade should be carried out by said Wills as agent for said Donnell, or by both said Miller and said Wills jointly as the agents of said Donnell. That said Miller agreed that said Wills might act as the agent of the defendant Donnell at the instance and request of said Donnell according to the suggestion contained in said last mentioned letter. That in keeping with said arrangement plaintiffs at once paid over to said Wills the sum of one hundred dollars in cash as part payment of the purchase price of said land, and accepted his written receipt therefor, which in words and figures is substantially as follows, towit:

"Amarillo, Texas, January 2, 1906.

"Received of Thomas Currie and E. L. Dohoney one hundred dollars as earnest money on sale of section 1, block H-1, and section 11, block K-5, Oldham County. Said land sold at $3.25 per acre, on terms of one-third cash, balance due on or before one and two years, notes at eight per cent, balance first payment to be made on delivery of warranty deed and abstract showing clear title. This sale is made on letter received from W. T. Donnell dated December 29, 1905.

(Signed) "J. H. Wills, agent for W. T. Donnell."

These allegations as to the agency of Wills, while not so explicit as they probably should have been to evade the force of a special objection to their form, are good as against one which attacks only their substance. The question then arises—treating Wills as the agent of the appellant—did he make a contract with appellees that was enforcible against his principal? The written receipt set out in the pleadings of the appellees does not appear to have been used as evidence upon the trial, notwithstanding Wills, who testified by deposition, refers to it as being attached as an exhibit to his answers. Wills, however, testified, without objection, to the contents of a memorandum made by him at the time. He says: "I made and executed and delivered to the plaintiffs a memorandum in writing acknowledging receipt of $100 and agreeing that the defendant Donnell would sell the land in controversy to plaintiff. I have attached the said receipt and make the same a part of my answer to this interrogatory and mark the same 'Exhibit K' for identification." There was also evidence that Dohoney, who was acting

for both the appellees in the negotiations, gave his check to Wills in part payment, and that it was accepted, and held as such by Wills for Donnell. These transactions were sufficient to conform to the requirements of the statute of frauds and make an enforcible contract against Donnell provided Wills had the authority.    Fulton v. Robinson, 55 Texas, 404; Morrison v. Dailey, 6 S. W., 426; Crutchfield v. Donathon, 49 Texas, 691, 30 Am., 112; Morris v. Gaines, 82 Texas, 255, 17 S. W., 538; Moore v. Powell, 6 Texas Civ. App., 43, 25 S. W., 473.

The important inquiry then is, was Wills authorized to bind the appellant in an executory contract to convey the land?   Viewing the relations of the parties and their transactions in the light of all the circumstances, and placing that construction upon the evidence tending to support the claim of authority in Wills, which the court might have done without an abuse of sound judicial discretion, we think that inquiry should be answered in the affirmative.   Colvin v. Blanchard, 101 Texas, 231, 106 S. W., 323; Lyon v. Pollock, 99 U. S., 668; Farrell v. Edwards, 8 S. D., 431, 66 N. W., 813; Glass v. Rowe, 103 Mo., 513, 15 S. W., 340; Smith v. Allen, 86 Mo., 190; 1 Clark & Sayles on Agency, sec. 227.

According to the evidence the agency of Wills authorized him to sell the land, not merely to find a purchaser and bring him to the principal so that these two might complete the negotiations.   It is true Wills had no power to convey the title, but that power was not essential to enable him to make an executory contract binding his principal to convey it. The principal resided at one place, and the agent and proposed purchasers at another.   Clearly it must have been contemplated that the agent should have the discretion of selecting a purchaser who was ready, willing and able to take the land upon the terms proposed by the owner. The evidence shows that this discretion had not been improperly exercised; that the purchasers were ready, willing and able to perform their contract in every particular; and that the principal defaulted from another, and a legally unjustifiable cause.

The grounds upon which we dispose of this case render it unnecessary for us to discuss the remaining assignments of error.   The judgment is accordingly affirmed.

*Affirmed.*

Writ of error refused.