SABINE INVESTMENT COMPANY OF TEXAS, INC., Appellant,

v.

Everett P. STRATTON et ux., Appellees.

No. 7917.

Court of Civil Appeals of Texas, Beaumont.

March 24, 1977.

Kenzy D. Hallmark, Lufkin, for appellant.

Mark S. Ward, Huntsville, for appellee.

STEPHENSON, Justice.

Plaintiffs, Everett Stratton and wife, brought this suit for specific performance of a contract for sale of land, allegedly entered into with defendant, Sabine Investment Company of Texas, Inc. Trial was by jury, and judgment was rendered for plaintiffs upon the verdict. The parties will be

referred to here as they were in the trial court.

The jury found that Cecil Rhinehart had actual authority to bind defendant in executing the contract of sale in question. Defendant has a no evidence point attacking that jury finding. In passing upon this point of error, we consider only the evidence favorable to such finding.

The favorable evidence is as follows: Cecil Rhinehart was employed by defendant to sell real estate for them. He was furnished business cards by defendant which contained both of their names and the words "real estate", "lake lots", "acreage", and "mobile homes". On November 14, 1973, plaintiffs were boating on Lake Rayburn and met Cecil Rhinehart. He was introduced as defendant's salesman, and he gave plaintiffs his business card. He showed plaintiffs some acreage in the Donald McDonald survey. He also showed plaintiffs a drawing of a map of that survey which had various tracts identified by number. Plaintiffs saw tracts 5 and 6 on that date and again on November 16, 1973. On such latter date, they signed the contract of sale, made the basis of this suit, and left a check in the amount of $1,000 with Cecil Rhinehart. Written on such check were the words "Down Payment on Lot # 5." The description in the contract of sale showed "Lot No. 5, in the Donald McDonald Survey, Subdivision in Sabine County, Texas, according to Plat recorded in the County Clerk's Office of such County, or legal description as follows: 3.7 acres more or less." The contract of sale also showed the cash price as $10,000, down payment as $1,000, balance $9,000 with interest from date at 10 percent per annum, and equal monthly installments of $118.95.

Joe Moore testified he had been a salesman for defendant and had executed many contracts for defendant and had never been told such contracts were subject to defendant's approval. He also testified that after the incident out of which this action arose, defendant had new forms of contracts prepared to show such contracts were subject to approval by an officer of the defendant.

Defendant contends that *Tex.Bus.Corp. Act.Ann. art. 5.08 (1956)* controls this point of error. This statute provides that a corporation may convey land by deed signed by the president or a vice president or attorney-in-fact for the corporation, when authorized by appropriate resolution of the board of directors or stockholders. Defendant's argument is that it is undisputed that it is a corporation, and there is no evidence that Cecil Rhinehart is the president or a vice president or an attorney-in-fact, authorized by resolution to execute the contract of sale in question. Defendant concludes that if Rhinehart could not execute a deed then he could not bind defendant to a contract of sale. We disagree.

A different rule applies in the factual situation before us. If this defendant was a corporation engaged in some business other than the buying or selling of real estate, and the contract of sale covered some real estate used in the corporate business, we would agree. However, this defendant was in the business of buying and selling land and had employed Cecil Rhinehart, among others, to sell such land. Rhinehart was furnished, by defendant, an office located near the property in question together with business cards showing his connection with defendant. A secretary employed by defendant was made available to Rhinehart together with maps and forms for contracts of sale. All of the surrounding circumstances would lead anyone doing business with Rhinehart to believe that Rhinehart had the authority to contract for the sale of defendant's land. The favorable testimony shows this was the usual manner for defendant to carry on the business of selling its land. Cecil Rhinehart had the implied authority from defendant to enter into the contract of sale with plaintiffs.

Even though there is little case and text law in Texas on this subject, we have found the following support for our conclusion. *19 Am.Jur.2d "Corporations" § 1227 at 640 (1965)* it is stated:

"By virtue of his office alone, no officer or agent of a corporation has any authority to sell or make a contract for

the sale of the real estate of the corporation. Nevertheless, the power of a corporate officer or agent to contract for the sale of the corporate lands does not necessarily have to be conferred by a formal resolution of the board of directors, but may, as in case of other power, be inferred from the conduct of the corporation in the transaction of its business and the power which the corporation has customarily permitted the officer or agent to exercise."

*In 9 A.L.R.2d 1312 § 3 "Sale of Corporate Assets" (1950)* this statement is made:

"Statutes requiring approval by a specified percentage of the stockholders in a corporation in order to validate a sale of all or a part of its business, franchise, or property have been held inapplicable to sales of all or a part of their real estate by corporations engaged in a general real-estate business; therefore, such sales have been upheld notwithstanding the fact that there was no attempt to proceed in accordance with the terms of such a statute."

In *Tuttle v. Junior Bldg. Corporation*, 228 N.C. 507, 46 S.E.2d 313, 317 (1948), this statement is made:

"The rule limiting the authority of officers in respect to the sale of real property is not, however, inflexible. Where a corporation is authorized to and does in fact engage in the business of buying and selling real estate and its officers are in the habit of conveying the property purchased as a part of the corporate stock in trade with the silent approval or acquiescence of the board of directors, authority so to do will be implied. *Brimmer v. Brimmer* [174 N.C. 435, 93 S.E. 984], supra; *Watson v. Manufacturing Co.*, 147 N.C. 469, 61 S.E. 273. In determining whether the rule must be applied, the business in which the corporation is engaged, the duties necessary to be performed by its officers, the relation of the property dealt with to the business and to its other property, the surrounding circumstances and the principle that corporate officers have 'the implied power, in the absence of express limitations, to do all acts on behalf of the corporation that may be necessary or proper in performing' their duties must be considered. Clark on Corporations, 494; *Brimmer v. Brimmer*, supra; *Lumber Co. v. Elias* [199 N.C. 103, 154 S.E. 54], supra."

One of the few Texas cases partially in point is *Donnell v. Currie & Dohoney*, 62 Tex.Civ.App. 134, 131 S.W. 88 (Texarkana 1910, writ ref'd). In this case, it was held that even though the agent had no power to convey the title to land, that such power was not essential to enable the agent to make an executory contract binding his principal to convey it. This point of error is overruled.

■ Defendant has a point of error that the contract in question does not satisfy the Statute of Frauds; *Tex.Bus. & Comm.Code Ann. § 26.01 (1968)* because the description of the land is inadequate.

The general rule, as followed by an unbroken line of authorities, is that the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty. *Morrow v. Shotwell*, 477 S.W.2d 538 (Tex.1972), and *Williams v. Ellison*, 493 S.W.2d 734 (Tex.1973).

The description in the contract in question before us, as set forth above, shows the land to be Lot 5 in the Donald McDonald Survey Subdivision in Sabine County, Texas, according to plat recorded in the County Clerk's office. No name of the subdivision is given, and the record shows no plat of this land in the County Clerk's office. A plat was admitted in evidence upon testimony that it is like the one plaintiffs were shown by Rhinehart. Assuming, for the purpose of further discussion, that the admission of such plat satisfies the requirement that it is "other existing writing" referred to in the contract, we proceed to consider the plat. Such plat gives the perimeter courses and distances so that the entire tract out of which this lot is alleged to be taken, can be located when considered with the information on the plat that it is

Tract No. 4 from Jasper Timber Co. & Sabine Investment, November 19, 1970, Vol. 224, Pg. 85. We think it is a reasonable inference that reference is thereby made to a deed and its recordation. Such plat shows it is divided in small parcels with the numbers from 1 to 29. The small parcels have the outside distances given with no angles or directions. It is apparent that no valid legal description could be arrived at by using the contract and plat together. To be able to ascertain with reasonable certainty the tract of land intended by the parties, the courses as well as the distances would be needed. As said in *Guenther v. Amer-Tex Const. Co.*, 534 S.W.2d 396 (Tex.Civ. App.—Austin 1976, no writ), doubtless the parties may have known and understood the land intended to be conveyed, the knowledge and interest of the parties will not give validity to the contract.

The use of the plat in connection with the contract in an attempt to find a good description of the property is highly doubtful. The trial court would not admit the plat in evidence for all purposes, but made this statement: "So there will be no question about it, I am admitting this map or this drawing to show what was used to show him the property he looked at."

The plat itself is somewhat crude, and it is obvious that the absence of "courses" indicates an actual survey was needed in order to complete the descriptions. Plaintiffs' testimony showed the surveyors were on the ground working when this transaction was being negotiated. Plaintiffs' testimony was also to the effect that a road was just being built; the trees had just been knocked down, and it was real muddy. A crew was to come out later and clear the underbrush. The evidence indicates everything was still in a tentative stage.

There were other aspects of the contract indicating it had not been completed. The name L. G. McCormick was written into the contract as a purchaser. It was understood that he would come up later and sign the contract. Rhinehart told the plaintiffs he would hold the contract until McCormick signed it. Plaintiffs were also told that if

McCormick liked Lot No. 6 better the $1,000 down payment would be transferred to that lot if it had not been sold. The contract was not dated; it was not shown when the installments would come due, and no date was shown as to when the parties signed it. The evidence shows the parties signed the contract on Saturday, and plaintiffs were called the following Monday to be told the contract had not been approved. The uncashed check was returned by mail to plaintiffs. This point of error is sustained. This case is reversed and rendered that plaintiffs take nothing.

REVERSED and RENDERED.