

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-15-00083-CV

MARK P. HARDWICK, INDIVIDUALLY AND
D/B/A MARK P. HARDWICK OIL AND GAS PROPERTIES
AND MARK P. HARDWICK, LLC, APPELLANTS

V.

SMITH ENERGY COMPANY, ON ITS OWN BEHALF
AND ON BEHALF OF SMITH ENERGY RESOURCE OIL, LTD.,
A TEXAS LIMITED PARTNERSHIP, AND ON BEHALF OF SMITH ENERGY
PARTNERS I, LTD., A TEXAS LIMITED PARTNERSHIP, APPELLEE

On Appeal from the 121st District Court
Terry County, Texas
Trial Court No. 19490, Honorable Rick Morris, Presiding

June 27, 2016

OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellants, Mark P. Hardwick, individually and d/b/a Mark P. Hardwick Oil and Gas Properties, and Mark P. Hardwick, LLC, appeal a judgment entered in favor of appellee, Smith Energy Co., rescinding contracts between the parties, awarding Smith $5,004,231 in equitable forfeiture damages, $104,876 for breach of contract, fraud,

theft, and breach of fiduciary duties, and $3,465,764 for attorney's fees. The judgment further denies all counterclaims asserted by appellants. We will affirm in part, reverse and remand in part, and reverse and render in part.

## Factual and Procedural Background

Mark Hardwick and two of his friends, Steve Blaylock and Jerry Elger, developed a method of predicting the presence of oil and gas in certain locations. The three friends took their method to Lester Smith, an investor in the oil and gas business, to see whether he would be interested in investing in their proposed development. Rather than the typical "third for a quarter" arrangement, whereby an investor agrees to pay one-third of the acquisition, seismic, and drilling costs in exchange for a quarter of the working interest, Lester Smith agreed to pay all costs in exchange for seventy-five percent of the working interest.

As a result of this agreement, five different prospect areas were developed resulting in five different sets of agreements: (1) North Mound Lake, (2) Big Bump, (3) On Point, (4) Muy Caliente, and (5) North O'Donnell/On Point Extension. Collectively, these agreements are referred to as the Fusselman Prospect Agreements (FPA). Each of these agreements, or their subsequently executed operating agreements, expressly disclaim the creation of a joint venture or partnership as well as the creation of any fiduciary duties between the parties to the FPA.

Subsequently, Hardwick and Lester Smith entered into a second agreement to develop another area referred to as the "Bad Billy" area. In the Bad Billy agreement,

Hardwick agreed to do land work in exchange for royalty interests and a day-work brokerage fee.

The FPA prospects were extremely successful and everyone involved made a lot of money. However, in August of 2011, a conflict arose between Hardwick and Lester Smith. As a result of this conflict, Hardwick no longer performed additional land work under any of the contracts. Because of Hardwick's failure to provide land services, Smith filed the instant suit against Hardwick and his LLC.

Smith's suit alleges claims of fraud, theft, breach of contract, and breach of fiduciary duties. Smith sought actual damages, exemplary damages, attorney's fees, interest, rescission of the FPA contracts, and equitable forfeiture. After trial, the jury found for Smith on all four claims. It found actual damages of $104,876, and determined that Smith had expended $3,465,764 in reasonable and necessary attorney's fees in prosecuting the case. The trial court ordered the contracts rescinded and awarded Smith $5,004,231 in equitable forfeiture damages. After post-trial motions were denied, Hardwick filed the instant appeal.

Hardwick presents ten issues by his appeal. His first five issues, many of which present subissues, generally challenge the findings that Hardwick breached the FPA and Bad Billy contracts (Issues 1 and 2), committed theft (Issue 3), breached fiduciary duties (Issue 4), and committed fraud (Issue 5). Hardwick also presents five issues directly related to the damages awarded. These issues challenge the equitable forfeiture award (Issue 6), award of attorney's fees to Smith (Issue 7), lack of an election

3

of remedies (Issue 8), rescission of the FPA (Issue 9), and failure to award the LLC attorney's fees (Issue 10).

## Fusselman Prospect Agreements

Hardwick appeals the sufficiency of the evidence supporting the jury's findings of fraud, breach of contract, theft, and breach of fiduciary duties as each of these findings relate to the FPA.

### Standard of Review

When a party challenges the legal sufficiency of the evidence supporting a jury finding, we consider the evidence in the light most favorable to the finding and indulge every reasonable inference that supports it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable jury could and disregard contrary evidence unless a reasonable jury could not. *Id.* at 827. If the evidence would permit reasonable and fair-minded people to reach the finding under review, the legal sufficiency challenge fails. *Id.*

When a party challenges the factual sufficiency of the evidence, we consider all the evidence and will set aside the finding only if the evidence supporting the finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). In conducting our review, we are mindful that the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819; *Hinkle v. Hinkle*, 223 S.W.3d 773, 782 (Tex. App.—Dallas 2007, no pet.).

Fraudulent Inducement

To recover for fraud, Petitioners must prove: (1) that a material representation was made; (2) that it was false; (3) that the speaker knew it was false when made or that the speaker made it recklessly without any knowledge of the truth and as a positive assertion; (4) that he made it with the intention that it be acted upon by the other party; (5) that the party acted in reliance upon it; and (6) damage. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992) (citing *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex. 1977)). A promise to act in the future constitutes fraud only when made with the intention, design, and purpose of deceiving—a promise made with no intention of performing the act. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). A party's intent to defraud is determined at the time the party made the misrepresentation. *IKON Office Solutions, Inc. v. Eifert*, 125 S.W.3d 113, 124 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Partial performance can negate an intent not to keep a promise at the time it was made. *See id.*

As an initial matter, we must determine what misrepresentation Smith claims induced it to participate in the FPA. During the trial, Smith contended that Hardwick agreed to provide land services under the FPA until the prospects were completed but that Hardwick never actually intended to provide those services. Smith testified that, had it known that Hardwick would not provide land services, Smith would not have entered into the FPA. However, a close review of the evidence Smith relies on to establish that Hardwick did not intend to provide land services fails to establish such an intent.

5

Smith specifically points to four times that it contends Hardwick testified that he never intended to provide land services to the FPA prospects. However, in each of these instances, Hardwick's testimony was that he never intended to be obligated to provide land services in exchange for the working interest he acquired under the FPA. In fact, the only direct testimony regarding whether Hardwick intended to provide land services established that he did. Further, the evidence indisputably establishes that Hardwick performed land services for the FPA prospects for over three years. There was testimony from the other parties to the FPA that all of the parties were aware that they were to serve a particular role in furtherance of the prospects but Smith was the only party that claimed that such an agreement had been specifically expressed. As such, accepting Smith's testimony that Hardwick expressly agreed to provide land services in furtherance of the FPA, there is no evidence in the record that such a statement was false. Consequently, there is legally insufficient evidence of a material misrepresentation.

Theft/Fraud[1]

Smith's theft claims are entirely based on Hardwick overbilling for his landman services. The jury found that Hardwick committed theft by overcharging Smith and that the amount of the overcharges was $36,003 on the FPA and $43,425 on Bad Billy. When specifically asked what sum of money would fairly compensate Smith for the theft, the jury found that the combined amount of damages caused by Hardwick's theft was $79,428. The record reflects that the basis for the theft findings was due to

---

[1] The trial court identified theft and fraud as two separate bases for recovery. However, it appears that both of these findings were premised on Hardwick overcharging Smith for landman services. As such, for consistency, we will discuss these claims in terms of theft.

6

Hardwick charging Smith for work on more days than exist in the given month. Hardwick does not directly respond to the evidence establishing that he billed for more days than existed in the given month.

The record contains evidence that supports the jury's finding that Hardwick overcharged Smith. Through the expert testimony of Jesse Daves, evidence was presented to the jury that Hardwick charged Smith for performing landman services on more days than exist in the given month and that Hardwick did so on a repeated and systematic basis. This evidence supports the jury's determination that Hardwick overcharged Smith in such a manner that it constituted theft. We affirm this jury finding.

Breach of Contract

Jury Question No. 1 asks, "Was Mark Hardwick obligated to provide landman services for the Fusselman prospects until the prospects were completed?" The jury answered in the affirmative. Hardwick does not challenge this finding directly. Rather, he challenges the sufficiency of the evidence in support of this finding.

On this issue, there is evidence in the record that supports a rational jury's conclusion that Hardwick was obligated to provide landman services for the FPA prospects until they were completed. The clearest evidence in support of this finding is Lester Smith's testimony that the parties to the FPA expressly agreed and shook hands that each were to provide the service over which they possessed expertise until the FPA prospects were completed. Further, Joey Hardin[2] testified that it was understood that each party was to provide services to the prospects until they were completed. While

---

[2] Hardin was an additional party to the FPA.

7

we acknowledge that the FPA contracts do not expressly obligate Hardwick to provide landman services at all, let alone until the prospects were completed, our review of the issue presented by Hardwick is limited to the sufficiency of the evidence to support the jury's answer to Question No. 1. The jury was free to believe the testimony of Smith and to reject the contrary testimony of Hardwick. *See Keller*, 168 S.W.3d at 819; *Hinkle*, 223 S.W.3d at 782. Under the applicable standards of review, we conclude that the evidence is both legally and factually sufficient to support the jury's answer to Jury Question No. 1.

Bad Billy Contract

Hardwick expressly challenges Smith's recovery under the Bad Billy contract on the bases that the rate that Hardwick was to be paid for each day's work was not identified in the Bad Billy contract and that contract was not ambiguous, and the Bad Billy claims violate the Statute of Frauds.

Overcharges

Without expressing any opinion as to whether the Bad Billy contract or the parties' subsequent conduct provided a set day rate that Hardwick could charge for landman services performed under the contract, our analysis above and the jury's damages award was not based on Hardwick billing for more than $500 per day. Rather, the overbilling damages were based on Hardwick billing for more days than exist in the month. As such, any error in the trial court identifying a $500 per day rate of pay for landman services in the jury charge was harmless even if it was erroneous.

8

Statute of Frauds

The Bad Billy contract indisputably conveys Hardwick an overriding royalty interest in exchange for his land work. An overriding royalty interest in an oil and gas lease is considered an interest in real estate that falls within the Statute of Frauds. *Quigley v. Bennett*, 227 S.W.3d 51, 54 (Tex. 2007) (citing *Consol. Gas & Equip. Co. v. Thompson*, 405 S.W.2d 333, 336 (Tex. 1966)). To satisfy the requirements of the Statute of Frauds, a contract "must furnish within itself, or by reference to some other existing writing, the means or data by which the [property] to be conveyed may be identified with reasonable certainty." *Long Trusts v. Griffin*, 222 S.W.3d 412, 416 (Tex. 2006) (per curiam) (quoting *Morrow v. Shotwell*, 477 S.W.2d 538, 539, (Tex. 1972)). Extrinsic evidence may be used only to identify the property with reasonable certainty from the identification contained in the contract, "not for the purpose of supplying the location or description of the [property]." *Id.* (quoting *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983)). However, it is sufficient if the contract includes enough of a description of the property that a person familiar with the locality can identify the premises with reasonable certainty. *Gates v. Asher*, 280 S.W.2d 247, 248-49 (Tex. 1955).

The record reflects that the question of whether the Bad Billy contract failed to identify the property to be conveyed with reasonable certainty was submitted to the jury, who found the identification sufficient. Hardwick objected to the submission of the question on the basis that the Bad Billy contract "violates the Statute of Frauds" and is,

9

consequently, unenforceable. In his motions for new trial and for judgment notwithstanding the verdict, Hardwick raised the specific objection that the identification of the property could not be determined with reasonable certainty.

Looking at the Bad Billy contract, there is no written description of the property covered by the agreement. Rather, the contract references a map that demarcates the boundary of the Bad Billy area as well as an area that is to be excluded from the Bad Billy area. In looking at the map, three sides of the area of inclusion follow county or section lines. However, there is no description of or identification of which section lines are being used as the boundary of the area of inclusion. Also, the fourth side, cutting through Hockley, Yoakum, and Terry counties, is diagonal and does not follow any section or county lines. Additionally, while the excluded area contained within the Bad Billy area appears to follow section lines, these section lines are in no way described or identified. The excluded area might be able to be determined with reasonable certainty by reference to the FPA since the Bad Billy contract provides that its area is subject to those agreements. *But see U. S. Enters., Inc. v. Dauley*, 535 S.W.2d 623, 629 (Tex. 1976) (when location, course, and distance is not written in the contract or on the map, it "would do violence to the Statute of Frauds to permit extrinsic evidence to furnish these essential descriptive elements"). Even with resort to the boundary descriptions of the FPA area, the map's demarcation of the Bad Billy area is not capable of being determined with reasonable certainty. *See Sabine Inv. Co. of Tex. v. Stratton*, 549 S.W.2d 247, 250 (Tex. Civ. App.—Beaumont 1977, no writ) (to ascertain with reasonable certainty the tract of land intended by the parties, the courses as well as the distances would be needed); *Guenther v. Amer-Tex Constr. Co.*, 534 S.W.2d 396, 398

(Tex. Civ. App.—Austin 1976, no writ) (no reasonable certainty when map not drawn to scale, did not show width or length of boundary lines, and did not show the approximate size of the tract or number of acres contained therein). Because we conclude that the area cannot be identified with reasonable certainty, we must conclude that the Bad Billy contract violates the Statute of Frauds. As such, the Bad Billy contract is unenforceable as to future performance and will not justify an award for replacement landman costs. *See Long Trusts*, 222 S.W.3d at 417.

## Charge Error

Hardwick contends that Smith's recovery under the FPA should be reversed because the charge that was submitted to the jury was erroneous, specifically because it groups all of the FPA contracts together and defines Smith to include assignees. Smith contends that the jury charge was appropriate.

Whenever feasible, submission of jury questions must be in broad-form. TEX. R. CIV. P. 277. In submitting broad-form jury questions, the "court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." *Id.* An instruction is proper if it assists the jury, accurately states the law, and finds support in the pleadings and evidence. *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 855-56 (Tex. 2009). Cases involving erroneous jury instructions are not subject to presumed harm. *See Bed, Bath, & Beyond, Inc. v. Urista*, 211 S.W.3d 753, 756-57 (Tex. 2006). As such, an incorrect jury instruction requires reversal only if it is reasonably calculated to and probably did cause the rendition of an improper judgment.

11

*Id.* at 757. To determine whether the instruction probably resulted in an improper verdict, we must examine the entire record. *Id.*

Because Hardwick's claims of charge error challenge jury instructions rather than multiple liability or damages theories, we do not presume harm and must review the entire record to determine whether the charge error was reasonably calculated to and probably did cause the rendition of an improper judgment. *See id.*

Hardwick contends that the inclusion of assignees in the definition of Smith invalidates the jury's findings. Hardwick argues that the definition of Smith in the jury charge caused harm because fraud requires reliance but the record does not contain evidence that Smith's assignees relied on any misrepresentation made by Hardwick. However, we have determined above that there is no evidence to support the jury's fraud finding and this portion of the verdict has been reversed. As to the theft claims, Hardwick contends that theft has a short statute of limitations and that there was no proof that the theft claims of the Smith assignees were not time-barred. We have previously determined that there is some evidence that would support the jury's determination that Hardwick committed theft by overbilling Smith. Limitations is an affirmative defense and, as such, it was Hardwick's burden to prove that Smith's assignees' theft claims were time-barred. See TEX. R. CIV. P. 94; *Pressure Sys. Int'l, Inc. v. Sw. Research Inst.*, 350 S.W.3d 212, 215-16 (Tex. App.—San Antonio 2011, pet. denied). Rather than citing to any proof or offer of proof that Smith's theft claims were time-barred, Hardwick argues that Smith did not prove that his assigned claims were timely. However, such an argument shifts the appropriate burden. Because Hardwick does not establish that any error in the trial court's definition of Smith was harmful, we

cannot conclude that any error was reasonably calculated to and probably did cause the rendition of an improper judgment.

Hardwick also contends that the jury charge erroneously groups each of the Fusselman Prospect Agreements into one group even though each of the agreements differ significantly. However, as indicated in our analysis above, the jury considered oral agreements that modified what was required under the written agreements. The evidence established that these oral modifications related to the entirety of the Fusselman prospects. Further, Hardwick does not identify how the grouping of the FPA contracts actually caused him harm. Thus, we conclude that, assuming that the charge was in error, the grouping of the agreements within the definition of the Fusselman Prospect Agreements was not harmful.

Breach of Fiduciary Duties

In addition to the claim of charge error addressed above, Hardwick contends that there is no evidence to support the jury's finding that he breached fiduciary duties owed to Smith. Hardwick's contention is essentially premised on the fact that the parties to the FPA specifically disclaimed fiduciary duties. Smith contends that the FPA activities established a joint venture between the parties and, consequently, Hardwick owed Smith fiduciary duties regardless of the disclaimers.

Generally, when parties have bound themselves to an unambiguous contract, courts will give effect to the manifest intent expressed in those contracts. *Coastal Plains Dev. Corp. v. Micrea, Inc.*, 572 S.W.2d 285, 287 (Tex. 1978). However, when the record shows that the actual effect of the arrangement resulting from the parties'

13

agreement differs from that stated in the contract, the contractual designation will not control. *See id.*

A joint venture must be based on an agreement, whether express or implied. *Id.* Additional essential elements in determining that an enterprise constitutes a joint venture are: (1) a community of interest in the venture, (2) an agreement to share profits, (3) an agreement to share losses, and (4) a mutual right of control or management of the enterprise. *Id.* However, we are mindful that the intention of the parties to a contract is a prime element in determining whether a partnership or joint venture exists. *Id.* Whether the parties have a formal fiduciary relationship, such as would arise from a joint venture, is a question of law. *Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 700 (Tex. 2007) (discussing agency).

Smith contends that, regardless of the disclaimers to the contrary, what the parties entered into was, in fact, a joint venture and, as such, Hardwick owed fiduciary duties to Smith and the other participants. However, regardless of whether the disclaimers of joint venture are effective and without addressing whether the enterprise under the FPA constitutes a joint venture, it is clear that the parties expressly disclaimed fiduciary duties. The operating agreements for each of the FPA prospects provide,

> It is not the intention of the parties to create, nor shall this agreement be construed as creating, a mining or other partnership, joint venture, agency relationship or association, or to render the parties liable as partners, co-venturers, or principals. In their relations with each other under this agreement, the parties shall not be considered fiduciaries or to have established a confidential relationship but rather shall be free to act on an arm's-length basis in accordance with their own respective self-interest, subject, however, to the obligation of the parties to act in good faith in their dealings with each other with respect to activities hereunder.

14

Smith contends that at least one court has concluded that a disclaimer that is nearly identical to the one used in relation to the FPA is not evidence of a lack of fiduciary relationship. However, the case cited by Smith, *Beckham Res., Inc. v. Mantle Res., L.L.C.*, No. 13-09-00083-CV, 2010 Tex. App. LEXIS 1323 (Tex. App.—Corpus Christi Feb. 25, 2010, pet. denied) (mem. op.), actually works against Smith's position. While our sister court interprets a provision that states, "[t]he Parties expressly do not intend to create, and no provision hereof shall be construed as creating a partnership, joint venture, mining partnership, corporation, association or other relationship whereby any Party shall ever be held liable for the acts either by omission or commission, of the other . . ." as expressing an intent to disclaim liability as to claims by third-parties, it ultimately concludes that the disclaimer "[i]n their relations with each other under this agreement, the parties shall not be considered fiduciaries or have established a confidential relationship but rather shall be free to act on an arms-length basis in accordance with their own respective self-interest" constitutes an effective disclaimer of any fiduciary duties that might arise by virtue of a joint venture or agency being created. *Id.* at *36-37 & n.9. Consequently, the court concluded that there were no fiduciary duties owed as a matter of law. *See id.* at *39.

We agree with this analysis. Courts must honor the contractual terms that parties use to define the scope of their obligations and agreements, including limiting fiduciary duties that might otherwise exist. *Strebel v. Wimberly*, 371 S.W.3d 267, 284 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (citing *Nat'l Plan Adm'rs, Inc.*, 235 S.W.3d at 703); *see* TEX. BUS. ORGS. CODE ANN. § 152.002(b)(2) (West Supp. 2015). This is especially true when the contractual limitation arises from an arms-length

business transaction between sophisticated businessmen. *Strebel*, 371 S.W.3d at 284; *see Nat'l Plan Adm'rs, Inc.*, 235 S.W.3d at 703. This principle adheres to Texas's public policy of freedom of contract. *El Paso Field Servs., L.P. v. Mastec N. Am., Inc.*, 389 S.W.3d 802, 811-12 (Tex. 2012); *see FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59, 67 (Tex. 2014).

Because the parties expressly disclaimed any fiduciary duties owed to one another as part of an arms-length business transaction between sophisticated businessmen, there is no evidence in the record establishing that Hardwick breached any fiduciary duties owed to Smith. As such, we affirm Hardwick's sufficiency challenge and reverse this portion of the judgment.[3]

Damages

Equitable Forfeiture

The largest portion of the damages awarded by the trial court is the $5,004,231 award for equitable forfeiture of Hardwick's interest in the FPA. The judgment recites that this equitable award is fully and independently supported by the fraud, fraudulent inducement, and breach of fiduciary duties findings made by the jury.

Equitable forfeiture is available as a potential remedy for a breach of fiduciary duty. *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 872 (Tex. 2010) (citing *Burrow v. Arce*, 997 S.W.2d 229, 237-45 (Tex. 1999)). It is also available where a

---

[3] As for Bad Billy, the jury found that Hardwick breached his fiduciary duties by overcharging and stopping before that prospect was completed. However, these independent grounds for recovery have been addressed above. It does not appear that there is any independent claim for damages that derive from an affirmative finding that Hardwick breach his fiduciary duties under the Bad Billy contract.

fiduciary fraudulently induces a party to enter into a contract when the party is ignorant of the fraud. *Id.* at 874.

We have previously determined that Hardwick did not owe Smith any fiduciary duties because the parties expressly disclaimed the existence of any fiduciary duties between them in the FPA contracts. As such, Hardwick's breach of fiduciary duties will not support this equitable forfeiture award.[4] Likewise, we have reversed the jury's findings of fraudulent inducement as not supported by legally sufficient evidence. Therefore, the award of equitable forfeiture is not supported by the jury's fraudulent inducement finding. Finally, while the judgment indicates that the equitable forfeiture award is fully and independently supported by the jury's fraud finding, we have not discovered and the parties have not cited this Court to authority that would authorize an equitable forfeiture on the basis of contractual overbilling as occurred in this case. We believe that such overbilling can be remedied by an award of actual damages sustained by the overbilling. As such, we reverse the judgment's $5,004,231 equitable forfeiture award.

Rescission

The judgment rescinds the FPA and Bad Billy contracts as between Hardwick and Smith while, otherwise, preserving the contracts as between the remaining parties. Rescission of a contract is not allowed unless the parties are restored to the positions they were in before the contract was made. *Costley v. State Farm Fire & Casualty Co.*, 894 S.W.2d 380, 387 (Tex. App.—Amarillo 1994, writ denied) (citing *Leonard v. Eskew*,

---

[4] While the Bad Billy contract does not disclaim fiduciary duties, the entirety of the equitable forfeiture award was based on the FPA.

731 S.W.2d 124, 131 (Tex. App.—Austin 1987, writ ref'd n.r.e.)). Here, neither party is requesting that they be restored to the position they were in before the contracts were made. As such, rescission of the contracts is not an appropriate remedy.

Theft

We previously determined that sufficient evidence established that Hardwick committed theft by overbilling. The jury determined that Hardwick overcharged Smith in the amount of $79,428, and awarded it this amount. This finding of the damages caused by Hardwick's overbilling on the prospects is supported by Daves's testimony. Daves testified that, based solely on Hardwick overbilling Smith for more days than exist in the month, Hardwick overcharged Smith a total of $79,428, between the two prospects. While Daves's testimony does not segregate the overcharges between the FPA and Bad Billy, it is sufficient to support the jury's finding that the theft damages were $79,428. As such, we conclude that there is sufficient evidence to support the jury's $79,428 damages finding for theft relating to the prospects.

Breach of Contract

The judgment awards an additional $25,448 that the judgment indicates is "fully and independently" supported by the jury's finding, *inter alia*, of breach of contract. Based on the jury's findings, this award reflects the reasonable and necessary expenses involved in hiring replacement landmen for the Bad Billy prospect. However, as we have determined that the Bad Billy contract violates the Statute of Frauds, it was error to award $25,448 for replacement landmen expenses on the Bad Billy contract after Hardwick and Smith parted. *See Long Trusts*, 222 S.W.3d at 417.

18

<u>Smith's Attorney's Fees</u>

The judgment awards Smith $3,465,764 as reasonable and necessary attorney's fees for representation in the trial court, with an additional $75,000 if Smith prevails on appeal to this Court, and an additional $100,000 if Smith prevails in the Texas Supreme Court.

The Texas Supreme Court has held, "subject to harmless error analysis, a reduction in actual damages requires the case to be remanded for a new trial on attorney's fees." *Barker v. Eckman*, 213 S.W.3d 306, 308 (Tex. 2006). In that case, the initial amount awarded was reduced to one-seventh of that amount once reversible errors were taken into account. *See id.* at 314. The Court concluded that it would not be possible for a higher court to properly consider the factual sufficiency of the evidence supporting the award of attorney's fees when there was such a significant reduction in the "results obtained," which was a factor in determining reasonable and necessary attorney's fees that the jury was instructed to consider. *Id.* at 313-14.

In the present case, we affirm the jury's award of $79,428 for theft damages but we have reversed the trial court's equitable forfeiture award of $5,004,231, for a reduction to less than one-fiftieth of the trial court's erroneous award. Obviously, such a significant reduction in the damages awarded prevents this court from meaningfully reviewing the factual sufficiency of the $3,465,764 attorney fee award, especially when, as in *Barker*, the jury was instructed to consider the "results obtained" in determining the appropriate amount of attorney's fees.

Mark P. Hardwick, LLC's Attorney's Fees

Hardwick contends that the trial court erred in failing to award the LLC its attorney's fees under the Texas Theft Liability Act because, by virtue of Smith's nonsuit of its theft claims against the LLC, the LLC was the prevailing party. However, our review of Smith's petitions reveal that it made no specific allegation of theft against the LLC. Rather, its theft allegation was asserted against the defendants collectively. Noteably, there are no factual allegations that the LLC committed theft in any of Smith's petitions, the LLC offered no defense to any theft claims, and Smith never offered evidence to support any theft claims against the LLC. In addition, Smith did not nonsuit any theft claims against the LLC. As such, we conclude that the trial court did not err in failing to award attorney's fees to the LLC.

## Conclusion

For the foregoing reasons, we affirm those portions of the judgment that find that Hardwick breached the FPA and Bad Billy contracts and committed theft in relation to these agreements. As such, we affirm the $79,428 damage award to Smith for Hardwick's theft. Further, we affirm the trial court's refusal to award attorney's fees to Mark P. Hardwick, LLC.

We reverse the findings that Hardwick fraudulently induced Smith to enter into the FPA and owed Smith any fiduciary duty. As such, we render judgment that Smith is not entitled to equitable forfeiture. We reverse the judgment's rescission of the FPA and Bad Billy contracts as between these parties. We also reverse the judgment's award of

20

$25,448 for replacement landman costs under Bad Billy and render judgment that Smith is not entitled to replacement landman costs under the Bad Billy contract.

We reverse the judgment's award of attorney's fees to Smith and remand that issue to the trial court for further proceedings.


Mackey K. Hancock
Justice